**In the Interest of S.T.S., JR., a Minor.**

**Appeal of S.T.S., Jr., a Minor.**

Superior Court of Pennsylvania.

Argued March 6, 2013.
Filed Aug. 15, 2013.
Reargument Denied Oct. 11, 2013.

---

Roarke T. Aston, Public Defender, Reading, for appellant.

Christine M. Sadler, Berks County Solicitor's Office, Reading, for Berks County Children and Youth, appellee.

BEFORE: BENDER, SHOGAN and FITZGERALD *, JJ.

OPINION BY SHOGAN, J.:

Appellant, S.T.S., Jr., appeals from the order entered July 23, 2012, which granted the Commonwealth's request for involuntary commitment. For the reasons that follow, we affirm.

Appellant was born in January of 1992. He has had a very complicated and tragic childhood. Appellant's problems have involved using alcohol, marijuana, cocaine and heroin. He has also had multiple involvements with authorities regarding violent behavior and mental health issues. At one point in 2006, he took a knife to school and threatened to kill a classmate. In addition, Appellant has admitted to having sexual contact with male and female relatives, as well as to the sexual assault of a fourteen-year-old female friend. In 2006, he was adjudicated delinquent on one count of indecent assault and put in placement.

In October of 2011, proceedings were commenced under the Court–Ordered Involuntary Treatment of Certain Sexually Violent Persons Statute ("Act 21"), 42 Pa. C.S.A. §§ 6401–6409.[1] Pursuant to Act 21, certain redacted documents were sent to the State Sex Offender Assessment Board ("the SOAB"). Various specialists testified regarding whether Appellant suffered from mental abnormalities requiring involuntary treatment. The trial court found, by clear and convincing evidence, that Appellant has a mental abnormality/personality disorder, which results in difficulty controlling sexually violent behavior and makes it likely he will engage in acts of sexual violence. Pursuant to 42 Pa.C.S.A. § 6403(d), the trial court committed Appellant for a period of one year to the sexual responsibility treatment program at a facility designated by the Commonwealth, Department of Public Welfare. This appeal followed.

Appellant presents the following issues for our review, which we reproduce verbatim:

I. Did the lower court err in denying S.T.S., Jr.'s request to dismiss the Act 21 proceedings as S.T.S., Jr. was not in placement pursuant to a 42 Pa.C.S. § 6352 disposition of an enumerated offense but, instead, for a violation of probation?

II. Did the trial court err in refusing to redact certain documents and statements reviewed by the Sex Offender Assessment Board as they contained communication made by S.T.S., Jr. to a psychiatrist or psychologist, or a member of their treatment team, for the purpose of treatment and thus subject to the 42 Pa.C.S. § 5944 privilege?

III. Did the trial court err in finding that there was clear and convincing evidence that S.T.S., Jr. has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes S.T.S., Jr. likely to engage in an act of

---

* Former Justice specially assigned to the Superior Court.

1. Act 21 became effective on February 10, 2004. We observe that minor alterations to the language of Act 21 have been made by our General Assembly since the time of the instant proceedings. However, these changes do not alter our disposition in this matter.

sexual violence, thus meeting the criteria for civil commitment pursuant to 42 Pa. C.S. § 6403(d), as there was neither clear and convincing evidence to support the diagnoses of the Commonwealth's expert nor to support a finding that S.T.S., Jr. would likely commit an act of sexual violence?

IV. Is Act 21 unconstitutional as it violates the guarantee of due process provided in both the Constitutions of the United States and the Commonwealth of Pennsylvania as it requires those with juvenile sex offenses to choose either to comply with treatment and provide incriminating information that will be used against him or not to comply and risk being held for an Act 21 offense up until the time he becomes eligible to be committed under the act?

V. Is Act 21 unconstitutional as it is a denial of equal protection guaranteed under the Constitutions of the United States and the Commonwealth of Pennsylvania as it impinges upon the fundamental right to be free from confinement and is not narrowly tailored to meet a compelling government interest?

Appellant's Brief at 5.

In his first issue on appeal, Appellant argues that he cannot be subject to Act 21 because, at the time of his twentieth birthday, he was not in placement pursuant to a section 6352 disposition for an enumerated offense. Appellant contends he was never placed in connection with his adjudication for indecent assault, an enumerated offense, but was in placement for probation violations at the time of his twentieth birthday.[2]

In *In the Interest of K.A.P., Jr.*, 916 A.2d 1152 (Pa.Super.2007), we addressed a similar issue[3] and we stated our standard of review as follows:

Appellant's argument is one of statutory interpretation. Our Supreme Court recently set forth the relevant principles of statutory construction, and our standard of review, as follows:

Because the present claim raises an issue of statutory construction, this Court's standard of review is plenary. *See Hazleton Area School Dist. v. Zoning Hearing Bd.*, 566 Pa. 180, 778 A.2d 1205, 1210 (Pa.2001). Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Commonwealth v. MacPherson*, 561 Pa. 571, 752 A.2d

**2.** We note with disapproval that in the argument portion of Appellant's brief, Appellant has failed to cite any portions of the record in connection with his discussion of points of evidence. Pennsylvania Rule of Appellate Procedure 2119(c) addresses arguments in appellate briefs and references to the record, and provides as follows:

If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears. . . .

Pa.R.A.P. 2119(c). Although this omission by Appellant has hampered our review of this matter, it is not so egregious as to warrant dismissal of the appeal. *See* Pa.R.A.P. 2101 (explaining that, if substantial, failure to conform with the Rules of Appellate Procedure pertaining to briefing requirements could lead to quashal or dismissal of the appeal).

**3.** In *In the Interest of K.A.P., Jr.*, the appellant argued that "the involuntary civil commitment program cannot apply to him because: (1) that program applies only to offenders who are in a juvenile facility as of their 20th birthday; and (2) Appellant was a state prisoner on that date (and, indeed, he remains a state prisoner)." *Id.* at 1155.

384, 391 (Pa.2000). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "as a general rule, the best indication of legislative intent is the plain language of a statute." *See* [*Com. v.*] *Bradley* [575 Pa. 141], 834 A.2d [1127] at 1132 [ (2003) ] (citing *Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (Pa.2003)). In reading the plain language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant. *See, e.g., Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312, 316 (Pa.1979).

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, inter alia, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler,* 583 Pa. 478, 484–486, 879 A.2d 185, 189–190 (Pa. 2005).

*K.A.P., Jr.,* 916 A.2d at 1155–1156.

We begin our analysis with an overview of the statutes at issue. Section 6352 of the Juvenile Act provides, in pertinent part, as follows:

### § 6352. Disposition of delinquent child

(a) **General rule.**—If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

\* \* \*

(2) Placing the child on probation under supervision of the probation officer of the court ..., under condi-

tions and limitations the court prescribes.

42 Pa.C.S.A. § 6352(a)(2).

A child who has been adjudicated delinquent for certain acts of sexual violence and committed pursuant to section 6352, and who remains committed upon attaining twenty years of age, is subject to assessment by the SOAB pursuant to section 6358, as follows:

### § 6358. Assessment of delinquent children by the State Sexual Offenders Assessment Board

(a) **General rule.**—A child who has been found to be delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) who is committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and who remains in such facility upon attaining 20 years of age shall be subject to an assessment by the board.

(b) **Duty of probation officer.**—Ninety days prior to the 20th birthday of the child, the probation officer shall have the duty to notify the board of the status of the delinquent child and the institution or other facility where the child is presently committed. The probation officer shall assist the board in obtaining access to the child and any information required by the board to perform the assessment, including, but not limited to, the child's official court record and complete juvenile probation file.

\* \* \*

(c) **Assessment.**—The board shall conduct an assessment, which shall include the board's determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality as defined in section 6402 (relating to definitions) or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior. Upon the completion of the assessment pursuant to this section, the board shall provide the assessment to the court. . . .

(d) **Duty of court.**—The court shall provide a copy of the assessment by the board to the probation officer, the district attorney, county solicitor or designee and the child's attorney.

(e) **Dispositional review hearing.**—Where the board has concluded that the child is in need of involuntary treatment pursuant to the provisions of Chapter 64 (relating to court ordered involuntary treatment of certain sexually violent persons), the court shall conduct a hearing at which the county solicitor or a designee, the probation officer and the child's attorney are present. The court shall consider the assessment, treatment information and any other relevant information regarding the delinquent child at the dispositional review hearing pursuant to section 6353 (relating to limitation on and change in place of commitment), which shall be held no later than 180 days before the 21st birthday of the child. . . .

(f) **Subsequent proceeding.**—If, at the conclusion of the dispositional review hearing required in subsection (e), the court finds there is a prima facie case that the child is in need of involuntary treatment under the provisions of Chapter 64, the court shall direct that the county solicitor or a designee file a petition to initiate proceedings under the provisions of that chapter.

42 Pa.C.S.A. § 6358.

Chapter 64 controls the civil commitment of sexually violent children assessed

to be in need of involuntary treatment pursuant to section 6358. Section 6401 provides as follows:

### § 6401. Scope of Chapter

This chapter establishes rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S.A. § 6401.

The procedures to be followed are detailed in subsequent sections of the Act, as follows:

### § 6403. Court-ordered involuntary treatment

**(a) Persons subject to involuntary treatment.**—A person may be subject to court ordered commitment for involuntary treatment under this chapter if the person:

(1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.A. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).

(2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.

(3) Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

**(b) Procedures for initiating court-ordered involuntary commitment.—**

(1) Where, pursuant to the provisions of section 6358(f) (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board), the court determines that a prima facie case has been presented that the child is in need of involuntary treatment under the provisions of this chapter, the court shall order that a petition be filed by the county solicitor or a designee before the court having jurisdiction of the person pursuant to Chapter 63 (relating to juvenile matters).

(2) The petition shall be in writing in a form adopted by the department and shall set forth the facts constituting reasonable grounds to believe the individual is within the criteria for court-ordered involuntary treatment as set forth in subsection (a). The petition shall include the assessment of the person by the board as required in section 6358.

(3) The court shall set a date for the hearing which shall be held within 30 days of the filing of the petition pursuant to paragraph (1) and direct the person to appear for the hearing. A copy of the petition and notice of the hearing date shall be served on the person, the attorney who represented the person at the most recent dispositional review hearing pursuant to section 6358(e) and the county solicitor or a designee. The person and that attorney who represented the person shall, along with copies of the petition, also be provided with written notice advising that the person has

the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person.

(4) The person shall be informed that the person has a right to be assisted in the proceedings by an independent expert in the field of sexually violent behavior. If the person cannot afford to engage such an expert, the court shall allow a reasonable fee for such purpose.

**(c) Hearing.**—A hearing pursuant to this chapter shall be conducted as follows:

(1) The person shall not be called as a witness without the person's consent.

(2) The person shall have the right to confront and cross-examine all witnesses and to present evidence on the person's own behalf.

(3) The hearing shall be public.

(4) A stenographic or other sufficient record shall be made.

(5) The hearing shall be conducted by the court.

**(d) Determination and order.**—Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for inpatient involuntary treatment to a facility designated by the department. The order shall be in writing and shall be consistent with the protection of the public safety and the appropriate control, care and treatment of the person. An appeal shall not stay the execution of the order.

**§ 6404. Duration of commitment and review**

**(a) Initial period of commitment.**— The person shall be subject to a period of commitment for inpatient treatment for one year.

42 Pa.C.S.A. §§ 6403, 6404(a).

In *In the Interest of K.A.P., Jr.,* we stated the following with regard to interpretation of the statutes at issue:

While we agree that the literal language of the statute appears to support Appellant's interpretation [that a juvenile must be in a juvenile facility as of their twentieth birthday], we must bear in mind that the overarching goal of statutory interpretation is to ascertain the intent of the Legislature. Thus, we should not interpret the statute strictly and literally if doing so would create a result that is absurd, unreasonable, or impossible to execute. Moreover, the Legislature intends that all of its provisions shall be "effective and certain."

*Id.,* 916 A.2d at 1158 (citations omitted).

■ The Court in *In the Interest of K.A.P., Jr.* then held as follows:

We fail to see how Appellant's unilateral, intentional and criminal actions should compel a different result, simply because those actions placed him in state prison rather than a juvenile facility. The Legislature obviously could not have expected or intended Chapter 64 to be rendered void by the intentional and criminal actions of the very people that the law is intending to benefit. If we were to adopt Appellant's interpretation, we would do nothing but encourage similarly situated individuals to avoid Chapter 64 by similar means (or by less violent means, such as simply escaping from the facility). Such an interpretation would severely impair the certainty and effectiveness of the statute. Also, such an interpretation would deprive the public of the protections that Chapter 64

provides to potential victims of juvenile sexual offenders.

Thus, we hold that as a matter of statutory interpretation, the literal language of the statute must yield to the overarching intent of the Legislature that Chapter 64 cannot be defeated by Appellant's intentional acts. Appellant's first claim fails.

*Id.* (footnote omitted).

■ Instantly, our review of the record reflects that Appellant was adjudicated delinquent for conduct amounting to indecent assault, which, if committed by an adult, would have been a violation of the sexual assault statute. Although the initial disposition for the adjudication of indecent assault was probation, Appellant was never successfully discharged from probation. Appellant had new criminal charges and probation violations concerning the indecent assault adjudication that included not cooperating with court ordered treatment. The trial court aptly summarized Appellant's troubled history in this regard in detail, as follows:

[Appellant] had mental health issues while he was in placement. While the mental health system placed him, the same thing would have happened in the juvenile system. On September 19, 2006, [Appellant] was found involved in, and adjudicated delinquent on one count of indecent Assault and was put in placement. He was ordered to cooperate with treatment, but did not. He was discharged from treatment with Reading Specialists on August 3, 2009 after running away from his placement. The court ordered that, in that event, he would be detained. A bench warrant was issued. The court found [Appellant] in violation of his probation on June 3, 2010 and he was committed to Northwestern Human Services SET Program. On June 25, 2011, [Appellant] was placed at KidsPeace Children's Hospital due to self injury. On August 15, 2011, [Appellant] was ordered to remain in detention until placement at Abraxis. While in Abraxis, [Appellant] harmed himself. On September 14, 2011, he voluntarily admitted himself to Millcreek Community Hospital, a residential treatment facility, because of threats of suicide and homicide.

Trial Court Opinion, 12/8/11, at 7.

Moreover, as of his twentieth birthday in January of 2012, he was in continuing juvenile commitment for violation of probation imposed as a result of being adjudicated delinquent for conduct constituting indecent assault. Appellant admits in his appellate brief that on his twentieth birthday he was in placement at South Mountain Secured due to violating his probation by being unsuccessfully discharged from Abraxis. *See* Appellant's Brief at 23.

Appellant makes the following hyper-technical argument:

[S]hould this Court hold that any juvenile § 6352 placement at age 20 subjects a person adjudicated of an enumerated offense to Act 21, [Appellant] submits that his placement at South Mountain Secured, where he was on his 20th birthday, was not pursuant to § 6352 but Pa.R.J.P. 612[, addressing modification or revocation of probation]. Section 6352 deals with disposition when a juvenile has been adjudicated delinquent. However, [Appellant's] placement at South Mountain Secured was due to a violation of probation.

Appellant's Brief at 24.

We reject Appellant's construction of the statute at issue. It is undisputed that Appellant was in South Mountain Secured on his twentieth birthday due to his own self-injurious behavior. Similar to this Court's conclusion in *In the Interest of*

*K.A.P., Jr.,* we fail to see how Appellant's intentional acts of refusing to cooperate with court ordered treatment as part of his juvenile probation should render void the provisions of Act 21. Thus, we hold that because of his adjudication and continuing commitment, as a result of his violation of probation, Appellant was subject to the assessment in question. 42 Pa.C.S.A. § 6358(a). Accordingly, we are constrained to conclude that Appellant's contrary argument lacks merit.

■ In his second issue, Appellant argues that the trial court erred in failing to redact documents and statements, which were reviewed by the SOAB. Specifically, Appellant avers that the trial court erred in denying redaction of statements made by Appellant contained in documents generated by the Northwestern Academy, including those made during a polygraph administered while Appellant was receiving treatment at the facility. Appellant asserts, pursuant to 42 Pa.C.S.A. § 5944, that information acquired by a psychiatrist or psychologist in the course of professional services on behalf of a client is privileged and shall not be disclosed in any civil or criminal matter.[4]

The statute, which confers the psychotherapist-patient privilege and upon which Appellant now relies, provides as follows:

**§ 5944. Confidential communications to psychiatrists or licensed psychologists**

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

■ We have previously held that the opinions, observations, diagnosis, and treatment alternatives outlined by the professionals who interviewed a juvenile appellant during his juvenile detention are not privileged under section 5944. *See Commonwealth v. Carter,* 821 A.2d 601, 608 (Pa.Super.2003) (stating that "the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives particularly when such information finds its way beyond the client's personal file.") (quoting *Commonwealth v. Simmons,* 719 A.2d 336, 341 (Pa.Super.1998)). However, we also concluded the section 5944 privilege does protect disclosures made by the client within such setting. *Id.* Recently, in *In the Interest of T.B.,* 2013 PA Super 150, 75 A.3d 485 (Pa.Super.2013), we reiterated that "statements

---

4. We note Appellant also contends that the trial court erred in improperly admitting into evidence the testimony of Brian Swoyer, a youth development counselor at South Mountain Secured Treatment Unit, regarding particular fantasies expressed by Appellant. Appellant's Brief at 27–29. However, Appellant concedes that this specific issue was not raised in his Pa.R.A.P. 1925(b) statement. Appellant's Brief at 28 n. 24. Accordingly, we are constrained to conclude that any argument regarding Mr. Swoyer's testimony is waived for purposes of appellate review. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 308 (1998) (holding that where a trial court directs a defendant to file a concise statement pursuant to Pa.R.A.P. 1925, any issues not raised in that statement shall be waived). *See also Commonwealth v. Oliver,* 946 A.2d 1111, 1115 (Pa.Super.2008) (noting that *Lord* "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

of a juvenile made to a mental health professional while in treatment remain privileged and may be released to the SOAB only with the juvenile's written consent." In so doing, we reaffirmed "the conclusion we reached in *Carter* that record access by the SOAB remains subject to the psychotherapist-patient privilege." *Id.* at 496. We ultimately remanded in that case to the trial court with the following directive:

> In the event the court determines that the statements, evaluations, and summaries were made for treatment purposes and the juvenile was not represented by counsel and informed of his right against self-incrimination, the court shall vacate the determination of the SOAB and may resubmit the matter for evaluation by the Board without access to the records in question.

*In the Interest of T.B.*, at 497.

In this case, when presented with evidence of the possibility that the psychotherapist-patient privilege applied, the trial court redacted that information from the record, where the record contained sufficient information to make such determination. As explained by the trial court:

> Appellant alleges that we erred in refusing to redact certain documents, either in their entirety or in part, as they contained communication made by [Appellant] to a psychiatrist or psychologist, or a member of their treatment team, for purpose of treatment and are thus subject to the 42 Pa.C.S. § 5944 privilege. As we stated in our Decision of December 8, 2011 filed in this case, addressing the Amended Request for Additional Redaction of File, which we incorporate by reference, Appellant did not meet his burden of showing that all these documents were created as part of his treatment or under what circumstances they were made. Without a fac-

tual basis, we could not determine if the privilege or any other basis applied. This claim lacks merit.

Trial Court Opinion, 10/15/12, at 8–9.

In its prior opinion regarding Appellant's request for redaction, the trial court made the following thoughtful observations and justified the redactions made, as follows:

> The Juvenile Act has as its primary purpose the rehabilitation of the delinquent child, consistent with accountability, the protection of the public interest and the safety of the community. The purpose is attained through accountability and the development of competencies that will enable the juvenile offender to become a responsible and productive member of the community. 42 Pa. C.S.A. 6301(b)(2). 42 Pa.C.S.A. 6339 provides that psychiatric examinations and treatments are permitted in order to effectuate the purpose of the Juvenile Act. Therefore, compliance with treatment recommendations is paramount with the court's goal of rehabilitating the juvenile. Confidentiality for communications made during a juvenile's treatment is critical to the rehabilitation process.

> Therefore, we shall determine whether the documents at issue: 1) contain confidential communications from [Appellant], 2) to an agent of his psychiatrist or psychologist, 3) for the purpose of review and psychotherapeutic evaluation of his treatment plan. These documents in the JPO file consist of any and all evaluations performed by KidsPeace, Concern, Reading Specialists personnel, any and all Concern "Psychiatric Notes," any and all documents relating to his FBMHS treatment and any and all psychological and sexual evaluations, assessments and summaries performed by Alternative Rehabilitation Communi-

ties, Inc. (ARC) and/or Northwestern Human Services. He also asks the court to redact a "victim sheet."

At the hearing, [Appellant] called Dr. Robert Gill of Reading Specialists and Deneen Ebling of JPO. Dr. Gill provided the court with limited factual information to meet the juvenile's burden of establishing a privilege exists under 5944 and *Simmons, supra.* Addressed were four documents created at Reading Specialists: 1) the Sexuality Evaluation at page 223 of the JPO file; 2) the Discharge Report at page 837; 3) the Discharge Summary at page 863[;] and 4) the Victim Sheet at page 719. Dr. Gill clearly evaluated the juvenile on October 5, 2006, to make a recommendation for placement, so the Sexuality Evaluation document is not subject to a privilege. The Discharge Report, however, was written by a member of Dr. Gill's treatment team, therapist Courtney Tull, M.H.S., an agent of Dr. Gill, and contains confidential communications from [Appellant] to the therapist for the purpose of review and psychotherapeutic evaluation of his evaluation of his treatment plan, albeit unsuccessful. This document shall be redacted in its entirety. In addition, the Additional Comments on the Discharge Summary, beginning on page 864 at line 8 through line 11, consisting of confidential communications made by the juvenile directly to therapist Tull during his treatment, shall be redacted as well. In addition, Dr. Gill testified that the "victim sheet" was created by the juvenile at the beginning of his treatment as part of the treatment process. This document shall also be redacted in its entirety.

[Appellant] also challenges review of any and all polygraph exam reports and accompanying documents. The first report was completed by Thomas Freiwald on May 14, 2009 at Reading Specialists

at the request of Dr. Gill (pages 711–713 of the JPO file). It contains statements from the juvenile and [was] gathered for purposes related to treatment; Dr. Gill testified that he goes over this sexual autobiographical information with the assigned therapist, who then reports to Dr. Gill. This polygraph report shall be redacted in its entirety. The second and third reports were also prepared by Thomas Freiwald, but at Northwestern Academy (pages 946 & 947, and pages 1031 & 1032 of the JPO file). Having no testimony as to whether or not these documents were prepared at the request of a psychiatrist or psychologist for treatment purposes, they will not be redacted.

As for the other documents that this court has been asked to redact, the record is factually insufficient to make a proper determination if the documents were created as part of the juvenile's treatment or under what circumstances they were made as to address any other basis for redaction. Argument alone will not suffice.

Trial Court Opinion, 12/8/11, at 6–8.

■ Our review of the record reflects that the trial court held a hearing on November 29, 2011, at which time Appellant presented the testimony of Dr. Robert Gill, a founding partner of Reading Specialists, and Deneen Ebling, who served as Appellant's probation officer with the Berks County Juvenile Probation Office. N.T., 11/29/11, at 5–55. As noted by the trial court above, documents relating to Appellant's treatment while at Reading Specialists, as discussed by Dr. Gill during the hearing, were redacted from the file sent to the SOAB prior to Appellant's assessment. However, the record reflects that Appellant failed to present sufficient testimony regarding the essence of documents included in his file prepared while he was

at Northwestern Academy in order to properly invoke the psychotherapist-patient privilege. Accordingly, we cannot conclude that the trial court erred in failing to redact the additional items from Appellant's file. Thus, Appellant's claim fails.

In his third issue, Appellant argues that the trial court erred in determining that the Commonwealth presented clear and convincing evidence that Appellant met the criteria for involuntary commitment under Act 21. Essentially, Appellant contends that the Commonwealth failed to establish that Appellant has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes Appellant likely to engage in an act of sexual violence. Appellant contends that the Commonwealth did not establish that Appellant suffers from Antisocial Personality Disorder and Paraphilia Not Otherwise Specified, and that Appellant is likely to commit an act of sexual violence.

As noted above, court-ordered involuntary treatment of certain sexually violent persons is governed by 42 Pa.C.S.A. § 6403, which provides in relevant part, as follows:

§ 6403. **Court-ordered involuntary treatment**

\* \* \*

**(d) Determination and order.**—Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for inpatient involuntary treatment to a facility designated by the department. The order shall be in writing and shall be consistent with the pro-

tection of the public safety and the appropriate control, care and treatment of the person. An appeal shall not stay the execution of the order.

42 Pa.C.S.A. § 6403(d).

▉ We have explained that, at the appropriate hearing, it is the Commonwealth that bears the burden of showing by clear and convincing evidence that "the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year." *In the Interest of A.C.*, 991 A.2d 884, 889 (Pa.Super.2010) (citations, quotation marks, and emphasis omitted). Our Supreme Court has defined clear and convincing evidence as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re R.I.S.*, 614 Pa. 275, 36 A.3d 567, 572 (2011) (citing *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)). Thus, the clear and convincing evidence test "has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." *Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213, 219 (2006). Moreover, "in conducting [a] sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." *Id.* at 218 (citing *Commonwealth v. Sanford*, 580 Pa. 604, 863 A.2d 428 (2004)). With regard to sexually violent predator assessments, "[t]he task of the Superior Court is one of review, and not of weighing and assessing evidence in

the first instance." *Meals,* 912 A.2d at 223.

In addressing Appellant's concerns in this regard, the trial court made the following determinations:

Appellant first asserts that there was not clear and convincing evidence to support Dr. Valliere's diagnosis of Antisocial Personality Disorder and Paraphilia Not Otherwise Specified. At the hearing on July 20, 2012, Dr. Veronique Valliere opined, to a reasonable degree of psychological certainty, that Appellant meets the criteria for both mental abnormality as defined under the statute related to sexual deviance, namely paraphilia not otherwise specified to nonconsent as well as personality disorder, in his case, antisocial personality disorder. (Notes of Testimony, 7/20/12, p. 28). Dr. Valliere's expert opinion is in fact sufficient evidence to support this court's finding, by clear and convincing evidence, that Appellant has a mental abnormality or personality disorder, meeting the first prong under Act 21. See *supra, In re: R.Y., Jr.,* [957 A.2d 780,] 785 [ (Pa.Super.2008) ]. The record shows that Appellant meets diagnostic criteria for both mental abnormality, as defined under the statute related to sexual deviance; namely, paraphilia not otherwise specified to nonconsent, as well as a personality disorder, in his case antisocial personality disorders. And both are related to future likelihood of commission of sexually violent offenses. Dr. Valliere explained to the Court in detail how she went about reaching the conclusion that Appellant met the criteria for those particular diagnoses:

"Well, I'll do them each separately. In terms of the antisocial personality disorder, that's—a personality disorder is a pervasive and lifetime condition; basically, foundational condition on which the person's personality is developed. It's considered chronic and lifelong. And it's diagnosed through—in antisocial personality, diagnosed through examining an individual's lifetime traits and behaviors.

And for antisocial personality disorder diagnosis, a number of things are required. First, the individual has to be over the age of 18. Second, they have to meet diagnostic criteria prior to the age of 15 of a disorder called conduct disorder; and that disorder is marked by a pervasive pattern of breaking rules, criminal behavior, disregard for the rights of others. And some of the symptoms include sexual offending, truancy, substance use, a variety of criminal activity, defiance, things like that, prior to the age of 15.

[Appellant] certainly has that. He has a long history well prior. He was adjudicated early on. He had his sex offense around the age of 14. He was described in the records as being truant, having school disruption, failing sixth grade I believe four times; and then that resulted in a variety of other violent, defiant, and criminal behaviors including running away, things like that. So clearly, he meets the diagnosis of conduct disorder and has been diagnosed at least once in his records already.

Following that diagnosis, antisocial personality disorder diagnosis requires a persistence of that general criminality in disregard for the rules of society and disregard for the rights of others up to and past age 18 or at least up to 18. And Appellant has had that chronically throughout his placement until his current situation here with constant rule violations, substance abuse, aggression. So that—

the records clearly described a pervasive, persistent pattern of this antisocial behavior. So that's that diagnosis.

In relation to antisocial personality disorder in itself is not necessarily related to sexual violence; but when it exists in combination with a history of sexually violent behavior, it is a factor that increases the risk and some of the traits associated with the personality disorder like failure to respond to negative consequences, a lack of empathy, callousness, disregard for the rights of others. All of those are internal factors that make it difficult for the person to have and develop internal structures to prevent sexual violence."

N.T., 7/20/12, pp. 26–31.

Dr. Valliere also concluded there exists a second diagnosis of paraphilia. She explained to the court what criteria went into making that diagnosis:

"Paraphilia NOS is a category of sexual deviance, Your Honor, that basically captures the types of paraphilia behaviors that aren't listed—that aren't as common as things that are listed specifically in the DSM. So it captures the dozens and dozens, if not hundreds, of different types of deviant sexual arousal patterns that people can exhibit. A paraphilia, in general, is diagnosed from a persistent recurrent either thoughts, urges, fantasies or behaviors for a deviant target whether it be something like a nonhuman object, for terror, pain of the victim, children or other nonconsenting individuals. That type of fantasy behavior or arousal pattern must exist for six or more months and persist past the age of 16.

In Appellant's case, I chose nonconsent because of his persistent reports of recurring fantasies and deviant arousal

and masturbatory practices towards— and in the records, it's called rape, forcible assault and things like that. So clearly, not only in his offense behavior was there nonconsent, but in his fantasies and continued with his records called his deviant fantasies, there's elements of nonconsent that he continues to struggle with and masturbate to; and that deviant arousal pattern has persisted past—well past his age of 16. So he meets diagnostic criteria for that paraphilia as well."

N.T., 7/20/12, pp. 26–31.

As for the second prong, having serious difficulty controlling sexually violent behavior, Dr. Valliere testified:

"Well, these diagnoses are what has motivated his victimization of many victims, male, female, related, unrelated over the course of his adolescence; as well, his continued persistence of fantasies and his reinforcement of those fantasies is what is—would be considered having serious difficulty in controlling the sexual behavior. It's not that his diagnoses in and of themselves make it. They're the pathways to his offending. It's the fact that he is not able to manage those behaviors that make—fit the second prong of the sexually dangerous behavior and at this point in his treatment would make it likely that he would pose a risk to the community if not able to— because he's not able to—his ability to manage himself is highly jeopardized if he were to be released."

N.T., 7/20/12, p. 32.

Dr. Valliere cited to pertinent facts to support her opinion that Appellant meets the criteria for civil commitment of sexually violent delinquent children. (N.T., 7/20/12, pp. 26–35). The Commonwealth met its burden by clear and convincing evidence.

Appellant notes that several psychologists and psychiatrists who performed evaluations of Appellant prior to Dr. Valliere failed to make these diagnoses. It is well settled that the trier of fact is free to believe some, all or none of the evidence. It is of no import that other psychologists and psychiatrists did not make the same diagnoses as Dr. Valliere. The diagnosis is not unreliable because the behaviors relied upon in making it can also be attributed to other disorders. While other diagnoses might be relevant to management and treatment planning, they are not relevant in terms of the driving forces related to Appellant's sexual offending, sexual fantasies and continued criminality.

Trial Court Opinion, 10/15/12, at 5–8.

 Likewise, our review of the record, which includes the transcript from the hearing held on July 20, 2012, and the written evaluation provided by the Commonwealth (Commonwealth Exhibit 1, appended to N.T. 4/30/12), shows that the SOAB expert, Dr. Veronique Valliere, examined the appropriate factors in great detail. In her written report, Dr. Valliere set forth her evaluation procedures, explained Appellant's offense history and historical information, expounded upon her diagnostic summary, described the risk assessment ratings, and concluded that Appellant has an issue of serious difficulty in controlling sexually dangerous behavior meeting the requirement for civil commitment. In addition, in her testimony offered to the trial court, Dr. Valliere provided detailed discussion of her two diagnoses of Appellant's personality disorders, *i.e.,* paraphilia not otherwise specified to non-consent, and antisocial personality disorder, as well as testimony regarding her conclusion that Appellant exhibits difficulty in controlling sexual behavior. N.T., 7/20/13, at 25–35. Upon our careful and thorough review of the record in this matter, we conclude that the trial judge applied the appropriate legal principles to the record, and that his findings are supported by the record. Moreover, we accord great weight to the facts which the court found, because the trial court was in the best position to observe and rule on the credibility of the expert witnesses. Therefore, we conclude that Appellant's contrary claim lacks merit.

In his fourth issue, Appellant argues that Act 21 is unconstitutional because it violates the guarantee of due process provided by the United States Constitution and the Pennsylvania Constitution. Appellant asserts that "adjudicated sex offenders are forced to choose either to comply with treatment and provide incriminating information that will be used against him or not to comply and risk being held for an Act 21 offense up until the time he becomes eligible to be committed under the act." Appellant's Brief at 36.

 Initially, we observe that Appellant's discussion contained in the argument section of his brief addressing this issue is inadequate to provide meaningful appellate review. It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant authority. Pa.R.A.P. 2119(a). *See Commonwealth v. Knox,* 50 A.3d 732, 748 (Pa.Super.2012) (citing *Commonwealth v. Genovese,* 450 Pa.Super. 105, 675 A.2d 331, 334 (1996) (stating that "the argument portion of an appellate brief must be developed with a pertinent discussion of the point which includes citations to the relevant authority")).

 In *Commonwealth v. B.D.G.,* 959 A.2d 362, 371–372 (Pa.Super.2008), a panel of this Court offered the following relevant observation regarding the proper

**42** ■　■

formation of the argument portion of an appellate brief:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa. R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. *Commonwealth v. Williams,* 566 Pa. 553, 577, 782 A.2d 517, 532 (2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. *Id.* When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. *Commonwealth v. Luktisch,* 451 Pa.Super. 500, 680 A.2d 877, 879 (1996).

*B.D.G.,* 959 A.2d at 371–372.

■　Moreover, "mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter." *In re J.B.,* 39 A.3d 421, 437 (Pa.Super.2012) (quoting *Boniella v. Commonwealth,* 958 A.2d 1069 (Pa. Cmwlth.2008)). *See Connor v. Crozer Keystone Health System,* 832 A.2d 1112, 1118 (Pa.Super.2003) (concluding that challenges of a constitutional nature are waived for failure to adequately develop the claim).

■　Here, Appellant's argument pertaining to this claim of unconstitutionality contains a single citation to general legal authority regarding the due process clause, a footnote citing the due process clauses of the United States and Pennsylvania Constitutions, a discussion that the proceedings in this matter were unfair, and the bald legal conclusion that Act 21 should be declared unconstitutional because Appellant was required to disclose information used against him in an Act 21 proceeding, in violation of his due process rights. *See* Appellant's Brief at 36–39.

Essentially, the argument portion of Appellant's brief contains a list of alleged instances of due process violations but lacks any real analysis. This amounts to mere issue spotting and hampers our appellate review. Accordingly, we conclude that this issue is waived.

■　However, even if we were to ignore the waiver, we would conclude that Appellant's claim lacks merit as this Court has previously upheld the provisions of Act 21. With regard to Appellant's contention that juveniles are forced to be truthful in treatment, which facts would then be used against them in an Act 21 proceeding, we observe that this Court found meritless a similar issue in *In re S.A.,* 925 A.2d 838 (Pa.Super.2007). Specifically, we held the following:

> Appellant's next contention is that the trial court erred in finding that the Commonwealth has a compelling interest in public safety, and that the disclosure of information to mental health professionals by individuals subject to Act 21 is a mere "momentary inconvenience." **We hold that the alleged inconvenience of disclosing information to mental health professionals in an attempt to effectuate an appropriate determination under Act 21 is greatly outweighed by the interest in treating juveniles with certain mental abnormalities or personality disorders and ensuring public safety.** *Cf. Commonwealth v. Howe,* 842 A.2d 436, 446 (Pa.Super.2004) (discussing the issue of privacy rights in connection with reporting requirements of Megan's Law II). Consequently, Appellant's claim forms no basis for relief.

*In re S.A.,* 925 A.2d at 845 (emphasis added). We find this language in *In re S.A.* to be precedential, as well as instructive, and detrimental to Appellant's

contrary claim in the instant case. We further note that juveniles in Act 21 proceedings are entitled to the protections of 42 Pa.C.S.A. § 5944, as discussed previously. *See also, Carter,* 821 A.2d at 608; *In the Interest of T.B.,* 2013 PA Super. 150, at 495–96.

 Moreover, with regard to Appellant's overarching claim that Act 21 violates his guarantee of due process, we observe that this Court, in *In re K.A.P.,* 916 A.2d 1152 (Pa.Super.2007), addressed a challenge to Act 21 under due process and offered the following relevant discussion:

Within the final section of his brief, Appellant develops a claim that Chapter 64 violates due process by keeping juvenile sex offenders in indefinite civil commitment based on vague or weak predictions of future dangerousness. Appellant cites, *inter alia, Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

In *Foucha,* a criminal defendant in Louisiana was acquitted by reason of insanity. The defendant was placed in a mental hospital, where he regained his sanity. Louisiana law allowed the defendant to remain confined in the mental hospital unless he proved that he was no longer dangerous. The United States Supreme Court struck down that law on due process and equal protection grounds. The Court reasoned that the state presented no convincing basis for depriving a sane but potentially dangerous individual of his fundamental liberty interest without fundamental due process protections, such as proof of continued insanity and dangerousness by clear and convincing evidence. *Id.* at 85–86, 112 S.Ct. 1780.

Chapter 64 is readily distinguishable. Under Chapter 64, the burden is on the Commonwealth to prove by clear and convincing evidence that the juvenile has a mental abnormality or personality disorder that makes the juvenile likely to engage in an act of sexual violence. Moreover, the juvenile has the right to counsel, the right to expert assistance, the right to present evidence, and the right to cross-examine witnesses. After one year of civil commitment, it remains the Commonwealth's burden to prove by clear and convincing evidence that the juvenile has serious difficulty controlling his sexually violent behavior due to the mental abnormality or personality disorder. If the Commonwealth fails to carry its burden of proof, the juvenile is discharged. Indeed, the director of the facility can petition the court for a hearing at any time if he determines that the juvenile no longer has serious difficulty in controlling sexually violent behavior. 42 Pa.C.S.A. § 6404(c)(1). The juvenile himself can also file such a petition. Thus, Act 64 contains within it adequate protections against erroneous or outdated determinations. As such, Chapter 64 comports with the due process protections required for involuntary civil commitment set forth in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). *Accord [Commonwealth v.] Maldonado,* [576 Pa. 101, 838 A.2d 710, 714 (2003)] (registration and notification provisions of Megan's Law II do not violate due process); *In re Hancock,* 719 A.2d 1053 (Pa.Super.1998). Appellant is not entitled to relief on this claim.

*In re K.A.P.,* 916 A.2d at 1163–1164. Thus, having previously held that Act 21 meets the requirements for involuntary civil commitment, we would be constrained to conclude that Appellant's instant argument challenging Act 21 under the guise of due process lacks merit.

In his final issue on appeal, Appellant argues that Act 21 is unconstitutional because it violates the equal protection clauses of the United States Constitution and the Pennsylvania Constitution. Basically, Appellant contends that Act 21 impinges upon his fundamental right to be free from confinement and is not narrowly tailored to meet a compelling governmental interest. Appellant concedes in his appellate brief that this Court has previously, in both *In re S.A.* and *In the Interest of A.C.*, addressed the issue that Act 21 did not violate equal protection because Act 21 was narrowly tailored to meet a compelling government interest. *See* Appellant's Brief at 39–41.

■ Nevertheless, Appellant urges this Court to "reconsider" the holdings in *In re S.A.* and *In re A.C.*, employing the argument that the cases were decided incorrectly because Act 21 violates the equal protection clauses of the United States and Pennsylvania Constitutions. However, we must follow the decisional law established by our own Court. *Blumenstock v. Gibson*, 811 A.2d 1029, 1039 (Pa.Super.2002). Moreover, we observe that following our decision in *In re S.A.*, the Pennsylvania Supreme Court denied a subsequently filed petition for allowance of appeal. *In re S.A.*, 597 Pa. 733, 952 A.2d 678 (2008). Therefore, unless or until *In re S.A.* and *In re A.C.* are overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, they continue to be viable precedent for this Court and for the courts of common pleas. *Id.* *See also, Sorber v. American Motorists Ins. Co.*, 451 Pa.Super. 507, 680 A.2d 881, 882 (1996) (holding that even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remained binding precedent as long as the decision had not been overturned by our Supreme Court). Hence, we cannot afford Appellant the relief sought.

Order affirmed.