J-S44011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.M.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M.B. | No. 1254 WDA 2014 |

Appeal from the Order July 18, 2014
In the Court of Common Pleas of Bedford County
Criminal Division at No(s): CP-05-JV-0000032-2011

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 25, 2015**

Appellant A.M.B. appeals from an order of the Bedford County Court of Common Pleas finding Appellant to be a sexually violent delinquent child and committing him to involuntary treatment.   We affirm.

On September 2, 2011, following agreement by the parties, the trial court found A.M.B. guilty of indecent assault[1] and adjudicated A.M.B. delinquent.

On July 18, 2014, the trial court held a hearing pursuant to section 6403 of the Court-Ordered Involuntary Treatment of Certain Sexually Violent Persons Statute.[2]   Following the hearing, the trial court found the

_____

[1] 18 Pa.C.S. § 3126(a)(6).

[2] 42 Pa.C.S. §§ 6401-6409.

Commonwealth established, by clear and convincing evidence, that Appellant had a conduct disorder,[3] which was a personality disorder resulting in difficulty controlling sexually violent behavior and which made it likely he will engage in acts of sexual violence. N.T., 7/18/2014, at 62-63. The trial court ordered A.M.B. to be committed for involuntary treatment for one year. Order, 7/18/2014.

On August 1, 2014, Appellant filed a timely notice of appeal. On August 21, 2014, he filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On September 15, 2014, the trial court issued an order adopting its findings

_____

[3] Dr. Robert Wettstein stated the term conduct disorder is:

> used to describe juveniles . . . who have had a variety of different kinds of behavior problems for a period of time. Not just a single incident or two, but conduct that's occurred over at least a 12 month period. And there's [] different symptoms or behaviors that are characteristic of people with that disorder. . . . [I]ndividuals with conduct disorder have problems with destroying property, they might be vandalizing property deliberately. They might be stealing. They might be violating serious rules, running away from home. Setting fires. Being truant from school. And then, of course, there's some individuals with conduct disorder who are aggressive or violent either to people or to animals. They can bully other people. They can start physical fights. They can use weapons. They are physically cruel, or they can force sexual activity.

N.T., 7/18/2014, at 44-45.

from the hearing, at pp. 60 to 64 of the transcript, as its 1925(a) opinion.

Order, 9/15/2014.

Appellant raises the following issue on appeal:

Whether the trial court erred when it ruled that the Commonwealth demonstrated by clear and convincing evidence that Appellant is a sexually violent delinquent child and subject to court[-]ordered involuntary treatment pursuant to [42 Pa.C.S. § 6404] in contradiction to evidence to the contrary presented by Appellant?

Appellant's Brief at 7 (capitalization removed).

The Court-Ordered Involuntary Treatment of Certain Sexually Violent

Persons Statute:

[E]stablishes rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S. § 6401. A person may be subject to court-ordered commitment

for involuntary treatment if he:

(1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).

(2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in any such institution or facility upon attaining 20 years of age as a result of having been adjudicated delinquent for the act of sexual violence.

(3) Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

42 Pa.C.S. § 6403(a). The trial court must conduct a hearing to determine whether a person may be subject to court-ordered commitment for involuntary treatment. 42 Pa.C.S. § 6403. Further:

> Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for involuntary inpatient treatment to a facility designated by the department. The order shall be in writing and shall be consistent with the protection of the public safety and the appropriate control, care and treatment of the person. . . .

42 Pa.C.S. § 6403.

The Commonwealth "bears the burden of showing by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." *Commonwealth v. S.T.S., Jr.*, 76 A.3d 24, 38 (Pa.Super.2013). The Supreme Court of Pennsylvania has "defined clear and convincing evidence as 'testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.'" *Id.* (quoting *In re R.I.S.,* 614 Pa. 275, 36 A.3d 567, 572 (2011)).

"[I]n conducting [a] sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." *S.T.S., Jr.*, 76 A.3d at 38 (quoting *Meals*, 912 A.2d at 218). Our Court reviews the trial court's sexually violent predator assessment. *Id.* We do not "weigh[] and assess[] evidence in the first instance." *Id.* (internal citations and quotation marks omitted).

At the hearing Dr. Robert Stein testified for the Commonwealth. He noted that A.M.B. struggled with treatment. N.T., 7/18/2014 at 10. The staff at his current placement believed Appellant had a poor understanding of risk factors and was not ready to develop a relapse prevention or safety plan. *Id.* Dr. Stein testified that Appellant's notable risk factors are a lengthy sex offending history with multiple victims, having a male victim, incidents of anger and aggression, trouble in the treatment setting, poor treatment compliance, struggles with coping skills, continued minimization of offenses, and difficulties with self-regulation in the treatment setting. *Id.* at 10-11. He opined that Appellant had a diagnosis of conduct disorder due to his lengthy history of anti-social behavior that included sexual offenses. *Id.* at 11.

Dr. Stein further opined that Appellant would have a serious difficulty in controlling sexually dangerous behavior if released. N.T., 7/18/2014, at 11. He noted that "[d]espite three years plus of intervention, [Appellant] [had] not yet completed juvenile sex offender programming." *Id.* He had not completed the basic treatment pre-requisites, including presentation of

his offense in group treatment and development of a safety plan. *Id.* His secure facility had not considered step-down programming. *Id.* Dr. Stein concluded, if released, Appellant would be at risk of re-offending and he should continue in secure treatment. *Id.* at 11-12.

On cross-examination, Dr. Stein noted his diagnosis of conduct disorder was based on Appellant's history predating his placement in a secure setting. N.T., 7/18/2014, at 15. He acknowledged his report was completed on October 14, 2013, and, although he reviewed a psychological evaluation from February 2014 and monthly progress reports through March 2014, it was possible Appellant no longer met the criteria for conduct disorder. *Id.* at 17-18. Dr. Stein further noted that he could not predict whether an individual will re-offend, but could "say that they have a behavior pattern which could predispose to offending if released." *Id.* at 24.

Dana Evangelista, the clinical services manager at Appellant's secure placement facility, testified. N.T., 7/18/2014, at 29-30. She testified that Appellant's treatment progress has been "very slow." *Id.* at 30. She discussed his limited disclosure of offenses, noting it was "superficial." *Id.* Ms. Evangelista noted Appellant had not started his relapse prevention plan. *Id.* at 33. She testified he did not need to be restrained since his placement at the secure facility and had not engaged in any sexually inappropriate behavior since his placement. *Id.* at 35, 37.

Dr. Robert Wettstein testified for Appellant. He stated Appellant had not previously been diagnosed with conduct disorder and it was unusual for

someone to be diagnosed for the first time at age 20.  N.T., 7/18/2014, at 46.  Dr. Wettstein did not agree with Dr. Stein's diagnosis of conduct disorder.  *Id.* at 47.  He noted Appellant had "other problems," including Attention Deficit Hyperactivity Disorder, mood symptoms, and he had been oppositional.  *Id.* at 47-48.  Dr. Wettstein agreed there was a concern Appellant might reoffend, but testified there was no way to predict whether this would happen.  *Id.* at 48.  Dr. Wettstein concluded Appellant did not have a mental abnormality requiring involuntary treatment for sexual purposes. *Id.* at 49.

On cross-examination, Dr. Wettstein stated Appellant "certainly need[ed] to continue with his treatment." *Id.* at 50-51.  He further testified that, although it would be possible to receive treatment in an intensive out-patient program, Appellant is "not all that motivated to do it."  *Id.* at 51. Further, he questioned whether an out-patient program would succeed in "keep[ing Appellant] clinically challenged and motivated to pursue the treatment and participate in it[.]" *Id.* at 52.

The trial court noted both experts were well qualified.  N.T., 7/18/2014, at 60.  It noted Dr. Stein's testimony indicated Appellant met a diagnostic criteria of mental abnormality and was likely to commit sexually violent offenses in the future, but that Dr. Wettstein did not find Appellant suffered a mental abnormality. *Id.* at 62.

The trial court noted Dr. Stein discussed the assessment protocols and the matters from the record on which he relied and explained why the

assessments were credible. N.T., 7/18/2014, at 62. The trial court accepted this testimony and found it persuasive. *Id.* Dr. Wettstein testified that Appellant had not previously been diagnosed with conduct disorder and opined it was unlikely it would not be diagnosed until now. *Id.* The trial court, however, accepted Dr. Stein's finding that Appellant had conduct disorder. *Id.* at 62-63.

The trial court next discussed whether the conduct disorder resulted in a serious difficulty in controlling violent sexual behavior which made it more likely Appellant would engage in sexual violence again. N.T., 7/18/2014, at 63. Dr. Stein testified that Appellant lacked motivation in his juvenile treatment and that, over a three-year period, he failed to complete the program assigned to him. *Id.* Dr. Wettstein agreed that continued sexual offender treatment was important and necessary for Appellant. *Id.* The trial court noted that "[o]utside of the commitment process it's difficult to see how someone who is not motivated to obtain his treatment is likely to complete it absent compulsory commitment." *Id.* Further, the trial court credited Dr. Stein's testimony that, although there have been no sexual misbehavior actions within the past two years, Appellant's previous victims were mentally challenged or very young and he had no access to such individuals in his secure placement. *Id.*[4]

_____

[4] Because the trial court found Appellant was a sexually delinquent child, he is required to register as a sex offender pursuant to Sexual Offenders
*(Footnote Continued Next Page)*

The trial court concluded the record established that involuntary treatment was warranted and ordered Appellant be committed to involuntary treatment for one year.  N.T., 7/18/2014, at 64.

The record supports the trial court's conclusion and the Commonwealth presented sufficient evidence to prove, by clear and convincing evidence, that Appellant was a sexually violent delinquent child and committing him to involuntary treatment.

Order affirmed.

Judgment Entered.

(Footnote Continued)

Registration and Notification Act.  42 Pa.C.S. § 9799.13(9), 9799.15(a)(4). Appellant's brief makes an argument that such registration is unconstitutional as applied to juveniles even though the trial court conducted a hearing.  Appellant's Brief at 17-19.  He notes that during the pendency of his appeal the Supreme Court of Pennsylvania found that application of an irrebutable presumption of SORNA registration was inapplicable to juveniles and maintains the hearing process applied in this case also is unconstitutional.  **Id.** at 17-19.  Appellant, however, did not raise this in his question presented and did not raise a challenge to the constitutionality of SORNA before the trial court and has, therefore, waived the issue.  Further, the trial court did not apply the irrebutable presumption found unconstitutional in **In the Interest of J.B**., 107 A.3d 1, 2 (Pa.2014). Rather, it found by clear and convincing evidence, following a hearing, that Appellant was a sexually delinquent child.  **See Id.** at 19-20 (noting a reasonable alternative means existed, other than the irrebuttable presumption, to determine whether a juvenile is a sexually violent predator, referencing that "SORNA specifically mandates individualized assessment of juveniles who have been adjudicated delinquent of specified crimes and who are committed to an institution nearing their twentieth birthday to determine whether continued involuntary civil commitment is necessary.").

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/25/2015</u>