J-A11020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN RE: DILLE FAMILY TRUST | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: LORRAINE DILLE | : | |
| WILLIAMS AND ROBERT NICHOLS | : | |
| FLINT DILLE | : | |
| | : | |
| | : | |
| | : | No. 96 WDA 2022 |

Appeal from the Order Entered January 11, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 43 of 2019 O.C.

| IN RE: DILLE FAMILY TRUST | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: LORRAINE DILLE | : | |
| WILLIAMS AND ROBERT NICHOLS | : | |
| FLINT DILLE | : | |
| | : | |
| | : | |
| | : | No. 97 WDA 2022 |

Appeal from the Order Entered January 12, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 43 of 2019 O.C.

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED: SEPTEMBER 19, 2023**

Lorraine Dille Williams ("Lorraine") and Robert Nichols Flint Dille
("Robert") (collectively "Appellants" or "Beneficiaries") appeal at docket no.
96 WDA 2022 from the January 11, 2022 order declaring, following
reconsideration, that Louise Geer was lawfully appointed as Trustee of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Dille Family Trust ("DFT" or "Trust") on June 6, 2011, and that Appellants' purported removal of Ms. Geer on August 26, 2018, was ineffective. Additionally, Appellants appeal at docket no. 97 WDA 2022 from the January 12, 2022 order declaring, *inter alia*, that Dennis W. Fox resigned from his position as Trustee of the DFT on May 4, 2011, that he never acted in this capacity as Trustee prior to tendering his resignation, and enjoining Appellants and Mr. Fox from holding out to any person or entity that Mr. Fox is now or at any time has been Trustee for the DFT.[1] After careful review, we affirm.

The instant matter stems from a dispute over the situs of the DFT and whether Ms. Geer is the legitimate Trustee of the DFT. On April 17, 2019, Ms. Geer, acting as Trustee of the DFT, instituted the underlying action with the filing of a petition in the Court of Common Pleas of Lawrence County, Pennsylvania, Orphans' Court Division, seeking confirmation of her status as the Trustee of the DFT and seeking approval of her proposed distribution of the Trust assets. Appellants opposed the petition, claiming that Ms. Geer had never been lawfully appointed as Trustee. The Nowlan Family Trust ("NFT") and the Buck Rogers Company ("BRC") (collectively "Intervenors") filed a petition seeking to intervene in the orphans' court action,[2] which the court

---

[1] By *per curiam* order dated April 26, 2022, this Court consolidated the appeals filed at 96 and 97 WDA 2022.

[2] The DFT and the NFT have been involved in extensive litigation before the United States Patent and Trademark Office, the Patent and Trademark Appeals Board, and the United States District Court of the Eastern District of Pennsylvania, over the intellectual property rights of the fictional character, Buck Rogers.

granted on February 24, 2020, for the limited purpose of participating in the hearings to determine whether Ms. Geer is the legally authorized Trustee of the DFT. A bifurcated trial on the issue of Ms. Geer's Trustee status, originally scheduled to be held in April 2020, was continued multiple times due to COVID-19 concerns and discovery issues, and was eventually held on April 22 and 23, 2021.[3] After consideration of the evidence produced at trial and the briefs submitted by counsel for the parties, the orphans' court entered an order on June 23, 2021, declaring that Ms. Geer became the de facto Trustee[4] of the DFT on June 6, 2011, and that her status as de facto Trustee was terminated on August 26, 2018.[5]

_____

[3] The issue regarding approval of Ms. Geer's proposed distribution of the Trust assets was scheduled for a separate trial date and is not relevant to this appeal.

[4] As the orphans' court explained:

> A de facto trustee is an individual who believes they have been appointed as trustee, performs actions on behalf of the trust for the benefit of the beneficiaries and who holds themselves out as a trustee to the third parties, but who has never been legally appointed to the position of trustee. The concept of a de facto trustee applies to uphold the transactions and actions taken in good faith for the benefit of the beneficiaries by an individual who was not legally appointed trustee.

Order, 6/23/21, at 10-11 ¶ 11 (internal citations omitted).

[5] Applying California law, the orphans' court concluded that "[t]he purported appointment of [Ms.] Geer as the Trustee of the [DFT] was not in accordance with the requirements of Section 15660 of the California Probate Code, which would require an order of court to make [Ms.] Geer's appointment lawful." Order, 6/23/21, at 10 ¶ 9. *See also id.* at 12 ¶ 15-16 ("[T]he attempt to
*(Footnote Continued Next Page)*

On July 13, 2021, Ms. Geer and the Intervenors (collectively "Appellees") presented motions for reconsideration of the June 23, 2021 order, essentially arguing that the orphans' court applied the wrong legal standards regarding the appointment and removal of a trustee. The orphans' court granted their motions that same day, ordered the parties to file briefs, and scheduled argument on the reconsideration for October 20, 2021. The parties were directed, in particular, to "be prepared to argue whether the laws of Illinois or the laws of California are the determinative laws with regard to the issue of the validity of the initial[,] claimed appointment of [Ms.] Geer as Trustee of the [DFT]." Order, 8/3/21 (single page; unpaginated).

After careful consideration of the parties' briefs and the arguments made by counsel, the orphans' court issued the following amended findings of fact and conclusions of law:

### Findings of Fact

6. The [DFT] was created by Robert C. Dille and Virginia N. Dille [("Mr. and Mrs. Dille" or the "Settlors")] on August 16, 1979, in the state of California. The original Trustees were [Mr. and Mrs. Dille]. The Trust was amended on January 5, 1982. The sole

_____

appoint Attorney Louise Geer as Trustee failed under the California Probate Code, but because [Ms.] Geer was asked by both Beneficiaries to hold herself out as Trustee and all three mistakenly believed that she had been properly appointed under the California Code, [Ms.] Geer became the de facto Trustee of the [DFT] on June 6, 2011…. [Ms.] Geer continued to be the de facto Trustee of the [DFT] until August 26, 2018, when both Lorraine … and Robert … took affirmative steps to dispossess [Ms.] Geer of her de facto trusteeship."); CA Probate § 15660 (providing that "on petition of any interested person…, the court may, in its discretion, appoint a trustee to fill [a] vacancy").

beneficiaries of the [DFT] are the children of the settlors, Lorraine … and Robert.

7. Under the terms of the Trust as drafted, the Trust agreement is a California contact [*sic*] that creates a California trust[,] and all of the terms and provisions therein shall be "interpreted" according to the laws of the State of California.

8. [Mr.] Dille died on March 30, 1983. Upon the death of [Mr.] Dille, under the terms of the Trust as drafted, Arthur Martin became a Co-Trustee with [Mrs.] Dille in 1983.

9. On February 1, 1989, the Beneficiaries and the Co-Trustees executed a document transferring the situs of the [DFT] to Illinois.

10. [Mrs.] Dille died on February 17, 2009. Upon the death of [Mrs.] Dille, Arthur Martin became the sole Trustee in 2009.

11. On March 8, 2011, [Mr.] Martin sent a notice of his intent to resign [from] his position as Trustee of the [DFT]. Pursuant to the Amendment to the Trust, Dennis W. Fox was to be appointed as successor Trustee upon [Mr.] Martin['s] ceasing to act in that capacity.

12. On May 4, 2011, [Mr.] Fox sent a notice of his resignation from the position of successor Trustee of the [DFT]. [Mr.] Fox never acted in his capacity as Trustee and took no officials [*sic*] actions on behalf of the [DFT] prior to tendering his resignation on May 4, 2011.

13. According to the 1982 Amendment to the Trust, upon [Mr.] Fox['s] ceasing to act in the capacity of [T]rustee, the American Guaranty & Trust Company (now known as RBC Trust Company) was to be appointed as the successor corporate [T]rustee.

14. On May 19, 2011, the American Guaranty & Trust Company … declined to accept the position as successor Trustee to the [DFT]. The Beneficiaries attempted to secure a different corporate Trustee, but were unable to find a corporate Trustee willing to accept the position. These events left the [DFT] without a Trustee, in as much as the terms of the Trust made no other provisions for the appointment of a successor Trustee.

15. Robert … had some prior business contact with Attorney Daniel Herman; and Daniel Herman had a license from the [DFT] for certain limited purposes. Because of that prior familiarity, Robert…, who along with his sister Lorraine … were the sole

Beneficiaries of the Trust, contacted [Mr.] Herman about [his] becoming the Trustee for the [DFT].

16. [Mr.] Herman is a partner with his wife, Louise Geer, in the Pennsylvania law firm of Geer and Herman, P.C., with its sole office located in Lawrence County, Pennsylvania.

17. [Mr.] Herman informed Robert … that he did not want to become Trustee for the [DFT], but that his wife[,] Attorney Louise Geer, would be willing to be Trustee.

18. Arthur Martin was an attorney with an office in Chicago, Illinois[,] and had been the personal attorney for [Mr. and Mrs.] Dille, the original Settlors of the [DFT]. He had been the Co-Trustee and Trustee of the [DFT] for 28 years. To assist in the orderly appointment of a successor Trustee, [Mr.] Martin, on February 24, 2011, by email, communicated with Robert … and explained the steps that he believed were necessary to appoint a successor Trustee or to terminate the Trust. Because Lorraine … and Robert … had reached the minimum age of 35, under the terms of the Trust, the two of them by mutual agreement had the authority to terminate the Trust even before [Mr.] Martin sent his letter of resignation dated March 8, 2011.

19. [Beneficiaries] chose not to terminate the Trust and decided to ask [Ms.] Geer to be the successor Trustee.

20. [Beneficiaries] asked [Ms.] Geer to become the Trustee of the [DFT].

21. On June 6, 2011, [Beneficiaries] signed documents purporting to appoint [Ms.] Geer as Trustee of the [DFT].

22. Prior to signing the document on June 6, 2011, both [Beneficiaries] showed their personal attorneys the document that they had been asked to sign to appoint [Ms.] Geer as Trustee for the [DFT]. Their personal attorneys at least saw and reviewed the document and voiced no objection to the method chosen to appoint [Ms.] Geer as Trustee.

23. [Ms.] Geer and [Beneficiaries] all read the email between [Mr.] Martin and Robert … dated February 24, 2011[,] and followed the recommendations of [Mr.] Martin as to the method of appointing [Ms.] Geer as a successor Trustee.

24. At the time that [the Beneficiaries] signed the document to appoint [Ms.] Geer as Trustee of the [DFT], [they] had the

complete and absolute authority to terminate the Trust, if they desired to do so. They were the only Beneficiaries of the Trust.

25. At the time of the June 6, 2011 purported appointment of [Ms.] Geer as Trustee, California Probate Code required court approval for appointment of a non-corporate Trustee. Beyond the naming of specific successor Trustees and allowing for the appointment of a corporate Trustee, there were no provisions in the Trust document or its 1982 Amendment setting forth any other method of appointment of a Trustee.

26. At the time of the June 6, 2011 purported appointment of [Ms.] Geer, Illinois law permitted the appointment of a Trustee by a majority in interest of the Beneficiaries.

27. As of June 6, 2011, in the case of a vacancy, California law only allowed the appointment of a Trustee by court order.

28. After June 6, 2011, with the permission and consent of both Beneficiaries, [Ms.] Geer acted as the Trustee of the [DFT] and was permitted and did hold herself out to third parties as the Trustee of the [DFT].

29. After June 6, 2011, with the permission and consent of both Beneficiaries, [Ms.] Geer began administering the [DFT] from the office of Geer and Herman, P.C.[,] located in Lawrence County, Pennsylvania. Pennsylvania income tax returns were filed on behalf of the [DFT] by [Ms.] Geer as Trustee for the [DFT] in the years 2011, 2012, 2013, 2014, 2015[,] and 2016. A Trust bank account was opened in Pennsylvania. All Trust business was conducted by [Ms.] Geer from her offices in Lawrence County, Pennsylvania.

30. As of June 6, 2011, the [DFT]'s United States Trademarks for Buck Rogers had expired…, but the [DFT] still maintained Canadian, German[,] and some other trademark rights, and the [NFT] had applied for the U.S. Trademark Rights to Buck Rogers. The [DFT] had very little income and owed approximately $42,000.00 in attorney[s'] fees to a law firm for work that had been done for the Trust prior to June 6, 2011. This court is not making any findings of fact or rulings as to the validity or ownership of any trademark or intellectual property.

31. Holding herself out as Trustee, with the knowledge, consent[,] and acquiescence of [the Beneficiaries], [Ms.] Geer contested the [NFT]'s attempt to acquire the U.S. Trademark

Rights to Buck Rogers. The contest included litigation. The litigation was financed by the [DFT] and Lorraine….

32.    The litigation costs to contest the [NFT]'s claims to the U.S. Trademark Rights for Buck Rogers far exceeded the meager income of the [DFT].

…

35.    On November 28, 2017, [Ms.] Geer purporting to act as Trustee of the [DFT], filed Chapter 11 Bankruptcy on behalf of the [DFT]. [Ms.] Geer purposefully did not seek the permission of [the Beneficiaries] prior to filing the bankruptcy. [Ms.] Geer did not notify either Beneficiary that she had filed the bankruptcy action on behalf of the [DFT]. Lorraine … and Robert … only learned of the Chapter 11 filing when Lorraine…, as a creditor, received notice from the Bankruptcy Court that she was a listed creditor in the bankruptcy action filed by [Ms.] Geer on behalf of the [DFT].

36.    On August 26, 2018, [the Beneficiaries] sent written notice to [Ms.] Geer that she was no longer representing the [DFT] as Trustee.

37.    Despite receiving the August 26, 2018 notice from the Beneficiaries, [Ms. Geer] continued to hold herself out as Trustee of the [DFT] and continued to act as though she was Trustee of the [DFT].

…

43.    On December 11, 2018, [the Beneficiaries] filed an expedited motion in Bankruptcy Court to dismiss the bankruptcy case as improperly filed. The [NFT] and [Ms.] Geer filed objections to the motion.

44.    On February 20, 2019, Judge Jeffery A. Deller, dismissed the bankruptcy petition, finding that the [DFT] was not a business trust and therefore was not eligible for relief as a Chapter 11 debtor.

45.    On April 4, 2019, the Beneficiaries filed an *ex parte* petition in the Superior Court of California, County of Los Angeles[,] seeking an order of court confirming that [Ms.] Geer was not properly appointed Trustee and had no authority to act as such; confirming that the Beneficiaries removed the Trust assets on February 20, 2019; ordering that [Ms.] Geer cease purporting to

act as Trustee; appointing the Beneficiaries as Co-Trustees of the Trust; and compelling [Ms.] Geer to immediately surrender all Trust property and records. [Ms.] Geer contested the *ex parte* petition by specially[]appearing and filing a motion to dismiss for lack of jurisdiction and improper venue.

46. On July 11, 2019, in the Superior Court of California, County of Los Angeles, Judge Clifford Klein issued an order dismissing the Beneficiaries' *ex parte* petition and finding that California lacked personal jurisdiction over [Ms.] Geer; that pursuant [to] California Probate Code § 17002[,] the principle [*sic*] place of Trust administration was Pennsylvania; and that California did not have jurisdiction over the Trust because the Trust had no substantive connection with the state.

47. On October 2, 2020, in the Court of Common Pleas of Lawrence County, Pennsylvania, this court entered an order denying the [NFT]'s motion for partial summary judgment and the Beneficiaries' renewed motion for summary judgment and made an explicit finding that Lawrence County, Pennsylvania[,] has subject matter jurisdiction over this matter.

48. On October 8, 2020, this court entered an order of court denying the [NFT]'s motion to quash notice of no subject matter jurisdiction and for other relief and finding that the Court of Common Pleas of Lawrence County, Pennsylvania[,] has exclusive jurisdiction to determine the status of [Ms.] Geer as Trustee of the [DFT].

### Conclusions of Law

1. Pennsylvania [−] in particular[,] the Orphans' Court Division of the Court of Common Pleas of Lawrence County, Pennsylvania[, −] has mandatory and exclusive jurisdiction over the administration and distribution of testamentary trusts. 20 Pa.C.S.[] § 711(2).[6] The orphans' court division also has mandatory and exclusive jurisdiction over the appointment, control, settlement of the accounts of, removal and discharge of,

---

[6] We note that the orphans' court also has mandatory and exclusive jurisdiction over the administration and distribution of real and personal property of *inter vivos* trusts. 20 Pa.C.S. § 711(3). An *inter vivos* trust is defined as "an express trust other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor." *Id.*

and allowance to and allocation of compensation among all fiduciaries of estates and trusts. 20 Pa.C.S.[] § 711(12).

2. Paragraph 2.F of the [DFT] reads as follows:

**2.F Trust Situs**

This Trust Agreement is a California contract and creates a California Trust, and all of the terms and provisions hereof shall be ***interpreted*** according to the laws of the State of California, except that a majority of the beneficiaries ***may transfer the trust situs*** to a more convenient jurisdiction.

Therefore, while the terms of the Trust are to be "interpreted" according to California law, the situs where the Trust is administered can be changed by the Beneficiaries. If the situs is changed, the law under which the Trust is administered is changed, there being no provision in the Trust requiring the Trust to be administered under California law.

3. Because the Trust's situs was changed to Illinois on February 1, 1989, the laws of Illinois controlled the administration of the Trust at the time [Ms.] Geer was appointed as Trustee by the Beneficiaries on June 6, 2011.

4. [A]s of May 19, 2011, the [DFT] was without a Trustee and there were no provisions in the Trust document or its Amendment naming a successor Trustee or providing for a method by which a successor Trustee could be appointed following the resignations of all successor [T]rustees named in the document.

5. Since [Ms.] Geer's purported appointment on June 6, 2011, until August 26, 2018, [Ms.] Geer administered the [DFT] from her office at Geer and Herman, P.C., located in Lawrence County, Pennsylvania. [Ms.] Geer held herself out as the Trustee of the [DFT] to third parties and conducted Trust business out of her office in Lawrence County, Pennsylvania. [Ms.] Geer has resided in Lawrence County prior to June 6, 2011[,] and continues to reside in Lawrence County, Pennsylvania. On November 27, 2019, [Ms.] Geer as Trustee of the [DFT] filed a first and partial account and statement of proposed distribution in Lawrence County, Pennsylvania.

…

7. Pursuant to 20 Pa.C.S.[] §[§] 711(2)[ and] … 711(12), this court has exclusive jurisdiction over questions relating [to Ms.]

Geer's administration of the [DFT],[7] [Ms.] Geer's distribution of the [DFT] assets, over the question of [Ms.] Geer's status, and all accountings and issues relating to surcharges.

8. [Ms.] Geer believed she had been appointed as Trustee of the [DFT]. And with the permission and acquiescence of both Beneficiaries, [Ms.] Geer held herself out to third parties as the Trustee for the [DFT] starting on June 6, 2011. Following June 6, 2011, no further Trust business was conducted from the State of Illinois or California. Following June 6, 2011, the [DFT] was administered solely from the Commonwealth of Pennsylvania.

9. After [Ms.] Geer's purported appointment as Trustee on June 6, 201[1], the situs of the Trust was in the Commonwealth of Pennsylvania and the laws of Pennsylvania govern[ed] the administration of the Trust. The … terms of the Trust continue to be interpreted according to California law.

10. While California law is to be used to interpret the terms of the Trust, the terms of the Trust with regard to the appointment of a successor Trustee are not in dispute. The Trust set forth a series of successor Trustees. However, all of the named potential successors either were deceased or had declined or resigned appointment and no corporate Trustee could be obtained following the resignation of [Mr.] Martin on March 8, 2011[,] and [Mr.] Fox's resignation on May 4, 2011.

11. On July 11, 2019, in the Superior Court of California, County of Los Angeles, Judge Clifford Klein ruled that California no longer had jurisdiction over the Trust and that the principal place off [*sic*] the Trust administration was Pennsylvania. The Trustee and the Beneficiaries participated in the case before Judge Klein and are bound by this ruling.

12. As of June 6, 2011, Illinois law (Illinois Compiled Statutes Annotated 5/13(2)) provided that if there were no remaining trustees, "a successor trustee may be appointed by a majority in interest of the beneficiaries…[.]" [760 ILCS 5/13(2).] On June 6, 2011, [Ms.] Geer was lawfully appointed Trustee of the [DFT] by

---

[7] Because the DFT was created by Mr. and Mrs. Dille and took effect during their lifetime, the orphans' court's mandatory jurisdiction over administration of the Trust is granted under subsection 711(3), which governs *inter vivos* trusts, rather than subsection 711(2), governing testamentary trusts. 20 Pa.C.S. §§ 711(2)-(3).

the two Beneficiaries, Lorraine … and Robert…, in accord with then applicable Illinois law where the Trust was sited and being administered.

13. On June 6, 2011, [Ms.] Geer was lawfully appointed Trustee of the [DFT] by the Beneficiaries….

14. The question of whether … [Ms.] Geer was lawfully appointed as Trustee on June 6, 2011[,] was before the court. The fact that counsel for [Ms.] Geer and the Intervenors did not argue that Illinois law should be applied to the purported appointment on June 6, 2011[,] until the filing of the[ir] motion[s] for reconsideration, did not waive or preclude this court from finding that Illinois law was applicable and that the June 6, 2011 appointment of [Ms.] Geer as Trustee was lawful under Illinois law. Counsel was given notice and an opportunity to brief and argue whether Illinois law should be applied to the issue of the validity of the June 6, 2011 appointment.

15. The court having determined that [Ms.] Geer was lawfully appointed as Trustee on June 6, 2011, must determine if the August 26, 2018 writing[] by the Beneficiaries informing [Ms.] Geer that by unanimous agreement of the Beneficiaries, she was removed as Trustee for the [DFT] effective immediately, legally removed her from her position as Trustee. While under Illinois law, when a vacancy in the trusteeship occurs, a majority of the beneficiaries can appoint a trustee, there is no provision in Pennsylvania law (or Illinois law) empowering a majority of the beneficiaries to remove a trustee. [U]nder 20 [Pa.C.S. §] 7766, a trustee may be removed by the court upon request made by a beneficiary. The trustee is to be ordered to appear and show cause why he should not be removed[.] 20 [Pa.C.S. §] 3183. If the court determines that one of the provisions of 20 [Pa.C.S. §] 7766(b) applies, the court can then remove the trustee. (This statute mirrors [Section] 701 of the [Uniform Trust Code ("UTC")[8]] and is also consistent with Illinois law.) There is no provision in Pennsylvania law to allow the Beneficiaries to remove the Trustee on their own. Therefore, the writing of August 26, 2018[,] by the Beneficiaries did not remove [Ms.] Geer as Trustee of the [DFT].

---

[8] We believe the court meant to refer to Section 706 of the UTC. *See* 20 Pa.C.S. § 7766, *Comment* (noting that Section 7766 largely adopts Section 706 of the UTC in substance).

- 12 -

The result would be the same if the court had found Illinois law applicable.

16. The Beneficiaries did not file any action in either Illinois or Pennsylvania seeking a court order to remove [Ms.] Geer as Trustee.

17. In as much as the issues of the status of [Ms.] Geer as Trustee were bifurcated from the other issues of account and surcharges, a hearing on those issues will be scheduled.

Amended Findings of Fact, Conclusions of Law, and Order of Court ("Order I"), 1/11/22, at 1-12 (unnecessary capitalization omitted; emphasis in original). Accordingly, the orphans' court declared that "Louise Geer was lawfully appointed as Trustee of the [DFT] on June 6, 2011[; t]he purported removal of [Ms.] Geer on August 26, 2018, by written notice of the Beneficiaries, was ineffective and did not remove [Ms.] Geer as Trustee of the [DFT]," and scheduled a hearing on the remaining issues before the court. *Id.* at 12-13.

Subsequently, the Intervenors presented a petition seeking an order directing the Beneficiaries to give notice to Mr. Fox that he is not the Trustee of the DFT; that the Court of Common Pleas of Lawrence County, Pennsylvania, Orphans' Court Division has exclusive jurisdiction of all administrative matters pertaining to the DFT; that Mr. Fox is not permitted to initiate any proceeding pertaining to the administration of the DFT, except in the orphans' court; and to order Aurelius Robleto, Esquire, to cease his representation of the Beneficiaries absent a satisfactory explanation. In response, the orphans' court issued the following order:

1. Following a full trial on the issue as to whether or not [Ms.] Geer was lawfully appointed Trustee of the [DFT] … and whether or not [Ms.] Geer remains Trustee of the [DFT]…, this

court entered an order finding that [Ms.] Geer was lawfully appointed as Trustee of the [DFT] on June 6, 2011[,] and that the purported removal of [Ms.] Geer on August 26, 2018, by written notice of the Beneficiaries, was ineffective and did not remove [Ms.] Geer as Trustee of the [DFT].

2. This court found on October 8, 2020[,] that the court had subject matter jurisdiction to decide the status of [Ms.] Geer as Trustee of the [DFT,] and that this court has exclusive jurisdiction to decide whether or not [Ms.] Geer was appointed as Trustee of the [DFT] and whether or not [Ms.] Geer continues to be the lawful Trustee of the [DFT].

3. In the court order dated January 10, 2022, [and entered on January 11, 2022,] this court found that on May 4, 2011, [Mr.] Fox sent a notice of his resignation from the position of successor Trustee of the [DFT] and that [Mr.] Fox never acted in this capacity as Trustee and took no official actions on behalf of the [DFT] prior to tendering his resignation on May 4, 2011.

4. On July 11, 2019, in a case in which [Beneficiaries] participated, Judge Clifford Kline [*sic*] in the Superior Court of California for the County of Los Angeles dismissed the Beneficiaries['] petition and found that pursuant to California Probate Code Section 17002[,] the principal place of Trust administration was Pennsylvania[,] and that California did not have jurisdiction over the Trust because the Trust had no substantive connection with the state of California.

5. In the Superior Court of California for the County of San Mateo, on October 29, 2020, [Mr.] Fox, claiming to be the Trustee of the [DFT], [along with the Beneficiaries,] filed an *ex parte* petition without notice to [Ms.] Geer, or to the Intervenors in the above[-]captioned Lawrence County case, … asking for a court order confirming the termination of the [DFT] and the distribution of all assets of the [DFT] to the Beneficiaries. The petition did not inform the Superior Court of California for the County of San Mateo of the pending Lawrence County, Pennsylvania action or the prior ruling by the Superior Court of California for the County of Los Angeles, which had previously found that the [S]tate of California did not have jurisdiction to make rulings concerning the status of the [DFT]. While the court in the County of San Mateo did issue an order, the court later vacated it's [*sic*] order and dismissed the petition of [Mr.] Fox and the Beneficiaries with prejudice.

6. On September 23, 2020, Attorney Jennifer Mihok filed a general appearance on behalf of [Mr.] Fox, purporting to be Trustee of the [DFT], in the Lawrence County, Pennsylvania case at No. 43 of 2019, O.C. In addition, a praecipe to discontinue the Lawrence County case was filed in the Court of Common Pleas of Lawrence County on behalf of [Mr.] Fox.

7. By court order dated January 29, 2021 (filed on April 1, 2021), this court found that [Mr.] Fox had subjected himself to the personal jurisdiction of this court on September 23, 2020, when Attorney Jennifer Mihok entered her appearance on his behalf and the praecipe to discontinue was filed on behalf of [Mr.] Fox.

8. [The Beneficiaries] and [Mr.] Fox are hereby enjoined and prohibited from representing or holding out to any person or entity or governmental agency or court that [Mr.] Fox is now or at any time has been Trustee for the [DFT]. [Mr.] Fox is enjoined from taking any action purporting to be Trustee of the [DFT].

9. In as much as [the Beneficiaries] acted in concert with [Mr.] Fox as co-petitioners in filing a petition in the Superior Court of California for the County of San Mateo on August 29, 2020, the Beneficiaries have acted in concert with [Mr.] Fox in representing to others that [Mr.] Fox has [been] or is the Trustee of the [DFT]….

Order ("Order II"), 1/12/22, at 1-3 (unnecessary capitalization omitted).

On January 21, 2022, Appellants timely filed separate notices of appeal from the orphans' court's orders entered on January 11 and 12, 2022. On February 14, 2022, Appellants filed timely, court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. The orphans' court filed Rule 1925(a) opinions on March 16 and 18, 2022. The appeals were subsequently consolidated by this Court. *See Per Curiam* Order, 4/26/22 (single page).

Appellants present the following issues for our review:

1. Whether the [orphans'] court erred in ruling that, on June 6, 2011, [Ms.] Geer was lawfully appointed Trustee of the [DFT] by its Beneficiaries.

2. Whether the [orphans'] court erred in failing to determine that [Ms.] Geer and the Intervenors had waived the argument or had been precluded from arguing that Illinois law applied to [Ms.] Geer's purported June 6, 2011[] appointment as [T]rustee of the DFT, since no party advocated that position until after the trial had concluded.

3. Whether the [orphans'] court erred in ruling that a change in the situs of the DFT to Illinois also changed the law governing administration of the [T]rust and, under Illinois law, [Ms.] Geer was lawfully appointed [T]rustee.

4. Whether the [orphans'] court erred in its determination that Pennsylvania law controlled the administration of the Trust after [Ms.] Geer's purported appointment and, under Pennsylvania law, the Beneficiaries had not successfully removed her by August 26, 2018.

5. Whether the [orphans'] court erred with its finding that, after [Ms.] Geer read the email from [Mr.] Martin dated February 25, 2011, Ms. Geer then followed the recommendations of Mr. Martin as to the method of appointing herself as a successor [T]rustee.

6. Whether the [orphans'] court erred by enjoining [Mr.] Fox from taking any action purporting to be Trustee of the DFT, and by enjoining [Mr.] Fox and the Beneficiaries from representing or holding out to any person or entity or governmental agency or court that [Mr.] Fox is now or at any time has been Trustee for the DFT.

7. Whether the [orphans'] court erred in determining that the execution of a resignation of trusteeship by [Mr.] Fox[] disqualified Mr. Fox from ever becoming [T]rustee of the DFT.

8. Whether the [orphans'] court erred in determining that [Mr.] Fox had subjected himself to the personal jurisdiction in the [orphans'] court.

9. Whether the [orphans'] court erred in finding that a California court had determined that California did not have jurisdiction over the [DFT].

- 16 -

Appellants' Brief at 7-9 (unnecessary capitalization omitted).[9]

We review the merits of Appellants' claims mindful of the following: In an appeal from an orphans' court's decision,

> [we] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Vincent J. Fumo Irrevocable Children's Trust ex rel. Fumo*, 104 A.3d 535, 539 (Pa. Super. 2014) (citation omitted). Moreover, to the extent that Appellants' claims involve statutory interpretation and/or interpretation of the Trust document, such issues present questions of law over which our standard of review is *de novo* and our scope of review is plenary. *See In re Jackson*, 174 A.3d 14, 29 (Pa. Super. 2017); *B.K.M. v. J.A.M.*, 50 A.3d 168, 172 (Pa. Super. 2012).

**First & Third Issues**

We address Appellants' first and third issues together as they are closely intertwined. Essentially, Appellants argue that the orphans' court erred in ruling that because of the Beneficiaries' transferring of the Trust situs to Illinois in February of 1989, Illinois law controlled regarding administration of the Trust and that, consequently, the court mistakenly concluded Ms. Geer

---

[9] Appellants' claims are addressed herein out-of-order for ease of disposition.

was lawfully appointed Trustee of the DFT on June 6, 2011. **See** Appellants' Brief at 22, 32-40. **See also id.** at 22 (asserting that the orphans' court's prior June 23, 2021 decision, in which it applied California law and found that Ms. Geer was not properly appointed as Trustee of the DFT, was the correct decision, and that the court erred in applying Illinois law upon reconsideration). Appellants maintain that there is absolutely no basis to support the orphans' court's application of Illinois law in determining Ms. Geer's Trustee status. **Id.** at 32. In fact, they argue that the court's concluding "a change in situs should somehow subvert the settlors' unequivocal selection of California law defies logic." **Id.** at 36. **See also** Appellants' Reply Brief at 6 ("[T]he [orphans'] court failed to provide a legal basis for its conclusion that the Beneficiaries['] exercise of their discretion to change the situs of the DFT to Illinois resulted in the unintended consequence of invalidating the selection of California law.").[10]

---

[10] Appellants aver that the orphans' court vacated its prior June 23, 2021 decision "without citation to a single legal authority," and substituted it with the following "bare conclusion":

> [W]hile the terms of the Trust are to be "interpreted" according to California law, the situs where the Trust is administered can be changed by the Beneficiaries. If the situs is changed, the law under which the Trust is administered is changed, there being no provision in the Trust for requiring the Trust to be administered under California law.

Appellants' Reply Brief at 5-6 (quoting Order I at 9 ¶ 2). **See also id.** at 6 (adding that the orphans' court "simply restated that conclusion, again without reference to any legal authority[,]" in its Rule 1925(a) opinion) (citation omitted).

Appellants insist that the terms of the Trust document and California law should govern any dispute over the appointment of a Trustee, and that because California law would have required court approval, Ms. Geer was never legally appointed as Trustee of the DFT. Appellants' Brief at 18. In support of their argument, they claim that the Settlors' intent is "clear and unambiguous" and that if the Settlors "had desired that matters of trust administration be determined by the law of the situs state, they would have said so." *Id.* at 39. Hence, they conclude that "the law commands the application of California law, in accordance with the intention of the [S]ettlors of the DFT." *Id.* at 32. ***See also id.*** ("This [T]rust agreement is a ***California contract*** and creates ***a California trust***, and ***all of the terms and provisions*** hereof shall be interpreted according to the laws of the State of ***California***, except that a majority of the beneficiaries may transfer the trust situs to a more convenient jurisdiction." (quoting Geer's Petition, 4/17/19, at Exhibit 1 ("Trust Agreement" at ¶ 2.F) (emphasis added by Appellants)). After careful consideration, we determine no relief is due on these claims.

In its opinion, the orphans' court acknowledged that it initially applied California law and ruled that Ms. Geer was not properly appointed as Trustee of the DFT on June 6, 2011. ***See*** OCO I at 6-7 (explaining that, at the time, California law would have required court approval for Ms. Geer's appointment as Trustee, but "because the Beneficiaries had promoted [Ms.] Geer as Trustee, held her out to the world as the Trustee, and had allowed [Ms.] Geer to act as Trustee both in business dealings and before several courts," the

court had concluded Ms. Geer had become the *de facto* Trustee).  However,

the court explained:

> Well within the thirty[-]day time limit following the … court's initial decision, [Appellees] filed … motion[s] for reconsideration making the very credible argument that the situs of the Trust had been transferred in 1989 from California to Illinois, in accordance with the terms of the [T]rust document, and [Illinois] remained the situs for the Trust[] when [Ms.] Geer was appointed by the Beneficiaries on June 6, 2011.  Pa.R.C[iv.]P. 5505 reads as follows:
>
>> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within thirty days after it's [*sic*] entry…[.]
>
> During the thirty[-]day period, the trial court has broad discretion to modify it's [*sic*] orders[.]  ***PNC Bank[,] N[.]A[.] v. Unknown Heirs***, … 929 A.2d 219[, 226 (Pa. Super. 2007)].  The Beneficiaries cannot claim any surprise in this matter in as much as both the Beneficiaries' packet of trial exhibits and [Ms.] Geer's packet of trial exhibits contained the "Instrument Transferring Situs of Trust," which was signed by both Beneficiaries and both of the then Co-Trustees.  This document was offered by the Beneficiaries and [Ms.] Geer[,] and admitted into evidence.

***Id.*** at 7.

After consideration of the parties' arguments on their motions for

reconsideration and their briefs on the issue of whether the laws of Illinois or

California were controlling as to the validity of the claimed appointment of Ms.

Geer, the orphans' court amended its findings and conclusions of law and

found that Illinois law must be applied.  ***Id.*** at 5.  It reasoned:

> Because the situs had been changed by the Beneficiaries to the [S]tate of Illinois in 1989[,] and the Trust had been administered by [Mr.] Martin from the [S]tate of Illinois from that time until the date that [Ms.] Geer was appointed on June 6, 2011, the actual appointment of [Ms.] Geer on that date can only be adjudicated under the then applicable laws of the State of Illinois.

*Id.* at 8. "[U]nder the law of the State of Illinois, as of June 6, 2011, when the vacancy in the office of Trustee occurred, the Beneficiaries could, without [c]ourt approval, appoint a Trustee. Therefore, the Beneficiaries' appointment of [Ms.] Geer as Trustee on June 6, 2011[,] was a lawful appointment." *Id.* at 5.

In further support of its decision, the orphans' court opined:

[B]oth the Beneficiaries and [Ms.] Geer introduced the document that the Beneficiaries signed in 1989 transferring the situs of the Trust to the State of Illinois. While the terms and provisions of the Trust were still to be "interpreted" by California law, the change in the situs of the Trust to Illinois meant that the administration of the Trust would thenceforth be governed by the courts and the laws of Illinois, so long as the situs of the Trust remained in Illinois. Due to the resignation[] of [Mr.] Martin, the written refusal of [Mr.] Fox to accept the position of Trustee[,] and the refusal of the named corporate Trustee or any other corporate Trustee to accept the position, the Trust was without any Trustee and without any provision in the Trust document for the appointment of a successor Trustee.

Therefore, in 2011, the appointment of a successor Trustee was a matter concerning the administration of the Trust, that had its situs in the [S]tate of Illinois. Under Illinois law, the majority of the Beneficiaries or an Illinois court, upon petition, could appoint a successor Trustee. Both Beneficiaries, Lorraine … and Robert…, acting under the direction of the retiring Trustee, signed a document appointing [Ms.] Geer as Trustee. [Ms.] Geer therefore became the successor Trustee in accordance with the then applicable Illinois law.

*Id.* at 7-8. As we explain further *infra*, we agree with the orphans' court's reasoning, and we discern no abuse of discretion or error of law in its application of Illinois law in reaching its decision that Ms. Geer was lawfully appointed as Trustee on June 6, 2011.

- 21 -

To the extent that Appellants attack the orphans' court's Rule 1925(a) opinion for a lack of citations to legal authority, we note that "[t]he purpose of Pa.R.A.P. 1925(a) is to facilitate appellate review of a particular trial court order." *Commonwealth v. Parrish*, 224 A.3d 682, 692 (Pa. 2020) (internal ellipsis and citation omitted). *See also* Pa.R.A.P. 1925(a) ("[U]pon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall … file of record at least a *brief* opinion of the reasons for the order….") (emphasis added); *Commonwealth v. McBride*, 957 A.2d 752, 758 (Pa. Super. 2008) ("In order to conduct a thorough and proper review on appeal, an opinion explaining the reasoning behind the trial court's decisions is advantageous."). Here, the orphans' court filed an opinion addressing each of the issues listed in Appellants' Rule 1925(b) concise statement of errors and containing a thorough explanation of its reasonings for its January 11, 2022 decision, in compliance with Rule 1925(a). *See* Pa.R.A.P. 1925(a); Orphans' Court Opinion ("OCO I"), 3/16/22, at 5-8. In conducting appellate review, it is the duty of this Court to determine whether the orphans' court correctly applied the law to the facts in this case. *See McShea v. City of Philadelphia*, 995 A.2d 334, 338 (Pa. 2010) (indicating that when an appellate court entertains an appeal from a non-jury trial, it is not bound by the trial court's conclusions of law, "because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts") (citation omitted). Moreover, we may affirm the decision of the orphans' court if it is

- 22 -

correct on any grounds. *See Lilliquist v. Copes-Vulcan, Inc.*, 21 A.3d 1233, 1235 (Pa. Super. 2011) (stating that an appellate court may affirm a trial court's decision on any grounds supported by the record on appeal).

Instantly, we conclude that the orphans' court properly applied Illinois law in determining that Ms. Geer was lawfully appointed as Trustee on June 6, 2011, based on the following well-established principles. First, we recognize that, as of June 6, 2011, a conflict existed between the laws of California and Illinois regarding the administration of a trust.[11] Because Pennsylvania is the forum state, we turn to Pennsylvania's choice-of-law rules. *See* 20 Pa.C.S. §§ 711(3), (12) (granting the orphans' court with exclusive and mandatory jurisdiction over matters regarding the administration of an *inter vivos* trust and the appointment/removal of a trust fiduciary); *Melmark, Inc. v. Schutt By and Through Schutt*, 206 A.3d 1096, 1104 (Pa. 2019) ("Courts conduct a choice-of-law analysis under the choice-of-law rules of the forum state."). "As a general rule, the law of the chosen forum governs all procedural matters. A dispute concerning the applicable substantive law, however, compels a choice[-]of[-]law analysis." *Sheard v. J.J. DeLuca Co., Inc.*, 92 A.3d 68, 76 (Pa. Super. 2014) (citations omitted). "Where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the court should avoid the choice-of-

_____

[11] As explained *supra*, Illinois law perm,I,itted the appointment of a successor trustee by the majority in interest of the beneficiaries, whereas California law required court approval. *See* Order I at 4 ¶¶ 25-26.

law question." *Id.* (brackets and citation omitted). However, if a true conflict of law exists, as does in the instant matter, "the court must then decide which state has the greater interest in the application of its law, including which state had the most significant contacts or relationship to the action." *Id.*

In determining choice-of-law issues, Pennsylvania has adopted the Restatement (Second) of Conflicts of Laws. Section 272 of the Restatement provides:

> The administration of an *inter vivos* trust of interests in movables is governed as to matters which can be controlled by the terms of the trust
>
> > (a)  by the local law of the state designated by the settlor to govern the administration of the trust, or
> >
> > (b)  if there is no such designation, by the local law of the state to which the administration of the trust is most substantially related.

Restatement (Second) of Conflict of Laws § 272 (1971). "Matters of administration" are defined as "those which relate to the management of the trust[,]" which include "matters relating to the duties owed by the trustee to the beneficiaries[,] … the powers of a trustee, … the removal of the trustee and the appointment of successor trustees[,] … [and] the terminability of the trust." *Id.* at § 272, *Comment a*; *Id.* at § 271, *Comment a*.

Significantly, *Comment e* to Section 272 states:

> *If the actual place of administration is changed*, either *because* the trustee acquires a place of business or domicil in another state, or if in the exercise of a power of appointment *a trustee is appointed whose place of business or domicil is in another state*, the question arises whether thereafter the administration of the trust is governed by the local law of the other

state. This depends on the terms of the trust, or it may be authorized by implication, such as when the trust instrument contains a power to appoint a trustee in another named state. A simple power to appoint a successor trustee may be construed to include a power to appoint a trust company or individual in another state. ***In such cases, the law governing the administration of the trust thereafter is the local law of the other state and not the local law of the state of original administration.***

On the other hand, the terms of the trust may show the testator's intention that the trust is always to be administered under the local law of the original state. In such a case[,] the mere fact that the trustee acquires a domicil in another state or that by the exercise of a power of appointment a successor trustee is appointed who is domiciled in another state does not result in a change of the law applicable to the administration of the trust.

***Id.*** at § 272, *Comment e*. Thus, under Section 272 of the Restatement (Second), the administration of a trust will be governed by the local law of the new state following the change in a trust's situs, unless the trust agreement indicates the settlor's intent for the laws of the original state to continue to apply.

Here, there is no dispute that the Beneficiaries changed the situs of the DFT to Illinois on February 1, 1989.[12] The terms of the Trust allowed for the transfer of the Trust situs and contain no language indicating that the Settlors intended for the Trust to always be administered under California law. In fact,

_____

[12] "On February 1, 1989, both Beneficiaries and both Co-Trustees executed a document titled 'Instrument Transferring Situs of Trust,' transferring the situs of the [DFT] to the State of Illinois. The document specifically stated that the situs was being transferred to the State of Illinois, but, in accordance with Section 2.F of the Trust, all of the terms and provisions of the Trust Agreement are to continue to be 'interpreted' according to the laws of the State of California." OCO I at 2.

the only reference to California law in the Trust is contained in the following paragraph:

> **2.F** <u>**Trust Situs**</u>. This trust agreement is a California contract and creates a California trust, and all of the terms and provisions hereof shall be ***interpreted*** according to the laws of the State of California, except that a majority of the beneficiaries may transfer the trust situs to a more convenient jurisdiction.

Trust Agreement at ¶ 2.F (emphasis added). Paragraph 2.F only dictates that the terms of the Trust be ***interpreted*** under California law. The Trust is silent, however, as to which state's law shall govern ***administration*** of the DFT.[13]

Additionally, we note that as of June 6, 2011, the DFT was without a Trustee and there were no provisions in the Trust naming a successor Trustee or providing a method by which a successor Trustee could be appointed. ***See*** Order I at 2 ¶ 14; ***id.*** at 4 ¶ 25; ***id.*** at 9 ¶ 4. Finally, we determine that at the time of Ms. Geer's purported appointment, the administration of the DFT was most closely related to the State of Illinois. ***See*** Order I at 2 ¶¶ 8-11, 18 (indicating that the situs of the Trust was transferred to Illinois on February 1, 1989, and that Mr. Martin administered the Trust from his office in Chicago, Illinois for 22 years, through his resignation on March 8, 2011). Hence, in

---

[13] We reject Appellants' argument that the Settlors "plainly manifested their intent to select California law – holding firm to California law even if the Trust's situs moved to another jurisdiction[,]" Appellants' Brief at 33, and that the Trust document evidences "[S]ettlors' broad and indubitable selection of California law." ***Id.*** at 32. The record clearly belies these claims. Moreover, we deem Appellants' assertion that under Pennsylvania law, "[c]hoice[-]of[-]law provisions in contracts will generally be given effect[,]" ***id.*** at 33 (citations omitted), to be of no moment, as the DFT does not contain any such choice-of-law provision.

accordance with the terms of the Trust, Pennsylvania's choice-of-law rules, and Section 272 of the Restatement (Second), Illinois law governed the administration of the Trust at the time of Ms. Geer's claimed appointment. *See* Restatement (Second) Conflict of Laws § 272(b); *id.* at *Comment e*.

Turning now to the law of Illinois as it existed on June 6, 2011, we observe that trustee vacancies and the appointment of successor trustees were governed by 760 ILCS 5/13, which provided:

> In the event of the death, resignation, refusal or inability to act of any trustee[,] … [and] if there is no remaining trustee, *a successor trustee may be appointed* by a majority in interest if the beneficiaries then entitled to receive the income from the trust estate or, if the interest of the income beneficiaries are indefinite, *by a majority in number of the beneficiaries then eligible to have the benefit of the income of the trust estate, by an instrument in writing delivered to the successor, who shall become a successor trustee upon written acceptance of the appointment*, but no beneficiary who is appointed as a successor trustee shall have any discretion to determine the propriety or amount of any distribution of income or principal to himself or to any person to whom he is legally obligated.

760 ILCS 5/13(2) (emphasis added). There is no dispute that Robert and Lorraine were the sole, eligible Beneficiaries of the DFT. Moreover, Robert and Lorraine both signed a written document purporting to appoint Ms. Geer as Trustee on June 6, 2011, and the appointment was accepted by Ms. Geer. *See* Order I at 4 ¶¶ 21, 24. Accordingly, we agree with the orphans' court that Ms. Geer was lawfully appointed as Trustee of the DFT on June 6, 2011, pursuant to the laws of Illinois.

## Second Issue

In their second issue, Appellants claim that the doctrines of waiver and preclusion barred Appellees' argument that Illinois law controlled in determining the status of Ms. Geer's trusteeship. Appellants' Brief at 23. First, they argue that "a party is 'bound by the theory upon which he submits and tries his case. He may not, at the post-trial motion stage, raise a new theory which was not raised during trial.'" *Id.* at 29 (quoting *Solomon v. Presbyterian Univ. Hosp.*, 530 A.2d 95, 97 (Pa. Super. 1987) (internal citations omitted)). Nevertheless, they aver that Appellees maintained the position throughout the trial that California law applied to Ms. Geer's purported June 6, 2011 appointment, and that it was not until Appellees filed briefs in support of their motions for reconsideration that they raised the argument that Illinois law should be applied instead. *Id.* at 29-30. Additionally, they suggest that Appellees previously argued for the application of California law before other courts in related cases. *Id.* at 27-28 (citations omitted). *See also id.* at 30 ("[A] party to an action will be estopped from asserting a position inconsistent with his/her assertion or claim in a previous action, particularly if his/her contentions were successfully maintained." (quoting *Ballestrino v. Ballestrino*, 583 A.2d 474, 478 (Pa. Super. 1990))). Consequently, Appellants conclude that Appellees have waived the argument that Illinois law applies to determining the validity of Ms. Geer's appointment and/or that they should be judicially estopped from arguing that California law does not apply. *Id.* at 28, 31. Appellants' claims have no merit.

First, as the orphans' court opined regarding Appellants' waiver claim:

> In making decisions, [c]ourts have never been limited to the arguments presented by counsel. Likewise, appellate courts are not limited by the specific grounds asserted in the trial and may affirm a lower court opinion for any valid reason that is supported by the record[.] ***Scampone v. Highland Park C[a]re Center, LLC***, … 57 A.3d 582[, 596] ([Pa.] 2012).

OCO I at 7. Moreover, we reject Appellants' assertion that Appellees raised a new theory post-trial. The question of whether or not Ms. Geer was lawfully appointed as Trustee on June 6, 2011, was before the court. The underlying facts and evidence presented by Appellees never changed. Appellees' motion for reconsideration proffered, rather, that the court should apply Illinois law instead of California law, as previously argued. The question as to which state's law should be applied is a question of law for the orphans' court to decide. ***See Melmark***, ***supra***; ***Sheard***, ***supra***. ***See also*** Order I at 12 ¶ 14 ("Counsel was given notice and an opportunity to brief and argue whether Illinois law should be applied to the issue of the validity of the June 6, 2011 appointment."); OCO I at 7 (noting that the document transferring the situs of the DFT to Illinois was introduced at trial by both Appellants and Appellees).

As to their estoppel claim, Appellants have failed to establish that Appellees successfully argued in a previous action that California law should be applied to issues regarding the administration of the DFT. In support of their argument, Appellants reference a federal action instituted by Team Angry Filmworks, Inc., in 2015, against Ms. Geer as Trustee of the DFT, in the United States Central District Court of California, in which they claim Ms. Geer successfully avoided personal jurisdiction "[b]y arguing for the application of California law to administrative matters that were not directly addressed in

the Trust [i]nstrument[.]" Appellants' Brief at 27 (citing Geer's Motion to Dismiss ("Exhibit L") at 9, *Team Angry Filmworks, Inc. v. Geer*, No. 2:15-cv-05880-R-JPR (C.D. Cal. filed Sept. 15, 2015)). *See also id.* at 28 (suggesting that Ms. Geer successfully avoided personal jurisdiction in the federal case "only because of her insistence of the application of California's laws governing the administration of trusts").

Appellants erroneously attempt to conflate Ms. Geer's arguments in the federal action with the case *sub judice*. In the federal action filed by Team Angry Filmworks, Inc., Ms. Geer argued:

> The Trust was formed and organized approximately 45 years ago in the State of California under California law. However, the situs of the Trust was transferred to Illinois in 1989. The Trustee was appointed to administer and oversee the Trust in 2011, which she has done from Pennsylvania. Under California law, trusts lack the capacity to sue or be sued, so personal jurisdiction here hinges on the contacts with California of the Trustee (who is the defendant in this action), not the contacts with California of the Trust itself (which is not a party to this action).

*Id.* at 27-28 (quoting Exhibit L at 9 (internal citations omitted)). Ms. Geer's only reference to California law was regarding whether the California district court possessed personal jurisdiction over her in 2015, at which time she was administering the Trust from the Commonwealth of Pennsylvania. We fail to see how this is relevant to her argument in the present matter, in which she asserts that the laws of Illinois should apply to determine whether she was lawfully appointed as Trustee on June 6, 2011, because Illinois was the situs of the Trust at that time.

## Fifth Issue

In their fifth issue, Appellants assert that the orphans' court erred in finding that Ms. Geer followed the recommendations contained in Mr. Martin's February 24, 2021 email to Robert, as to the method of appointing herself as a successor Trustee. Appellants' Brief at 42-43. They explain that Mr. Martin's instructions referenced the appointment provisions of the California Probate Code, and that he advised the Beneficiaries and Ms. Geer to consult California law, "since it may contain provisions on how that section should be interpreted, or default rules for appointed trustees." *Id.* (emphasis omitted). Yet, Appellants argue that Ms. Geer failed to "heed Mr. Martin's advice and, as a result, her attempted appointment failed." *Id.* at 43. Due to our disposition of Issues 1 and 3, in which we determine that the orphans' court properly applied Illinois law in reaching its decision that Ms. Geer was lawfully appointed as Trustee of the DFT, we deem this claim to be moot. *See Orfield v. Weindel*, 52 A.3d 275, 277 (Pa. Super. 2012) ("Our Courts cannot decide moot or abstract questions….") (citation omitted).

## Fourth Issue

In their fourth issue, Appellants claim that the orphans' court erred in determining that Pennsylvania law controlled the administration of the Trust following Ms. Geer's appointment as Trustee on June 6, 2011, and that the Beneficiaries' attempt to remove Ms. Geer from her position as Trustee was therefore unsuccessful under Pennsylvania law. Appellants' Brief at 45. In the argument section of their brief, Appellants merely incorporate their argument regarding issue three – that California law governs the issue of

whether Ms. Geer was lawfully appointed as Trustee of the DFT – by reference, *see id.*, and they state: "The identical analysis commands that the laws of California – and not Pennsylvania law – govern the question of whether the Beneficiaries' efforts to terminate [Ms.] Geer's association with the DFT were effective." *Id.* No relief is due on this claim.

As the orphans' court found, immediately following Ms. Geer's June 6, 2011 appointment,

> with the permission and consent of both Beneficiaries, [Ms.] Geer began administering the [DFT] from the office of Geer and Herman, P.C.[,] located in Lawrence County, Pennsylvania. Pennsylvania income tax returns were filed on behalf of the [DFT] by [Ms.] Geer as Trustee for the [DFT] in the years 2011, 2012, 2013, 2014, 2015[,] and 2016. A Trust bank account was opened in Pennsylvania. All Trust business was conducted by [Ms.] Geer from her offices in Lawrence County, Pennsylvania.

Order I at 5 ¶ 29. "Following June 6, 2011, no further Trust business was conducted from the [S]tate of Illinois or California. Following June 6, 2011, the [DFT] was administered solely from the Commonwealth of Pennsylvania." *Id.* at 10 ¶ 8. Hence, the orphans' court concluded that "[a]fter [Ms.] Geer's … appointment as Trustee on June 6, 2011, the situs of the Trust was in the Commonwealth of Pennsylvania and the laws of Pennsylvania govern[ed] the

administration of the Trust." *Id.* at 10-11 ¶ 9.[14, 15]  We agree.  *See Sheard*, *supra*; Restatement (Second) Conflict of Laws § 272(b).

Accordingly, we look to the laws of Pennsylvania as they existed at the time of the Beneficiaries' writing dated August 26, 2018, to determine whether their attempt to remove Ms. Geer from her position as Trustee was successful.[16]  There is no provision under Pennsylvania law empowering a majority of the beneficiaries to remove a trustee on their own.  *See* Order I at 12 ¶ 15.  Rather, a trustee may only be removed by the court.  *See* 20 Pa.C.S. § 7766(a) ("The settlor, a co[-]trustee[,] or a beneficiary may request the court to remove a trustee or a trustee may be removed by the court on its own initiative."); 20 Pa.C.S. § 7766(b) (indicating the circumstances under which the court may remove a trustee).  Here, no action was filed by the Beneficiaries seeking a court order to remove Ms. Geer as Trustee.  Order I at 12 ¶ 16.  Thus, the orphans' court properly concluded that the Beneficiaries'

---

[14] *See also id.* at 11 ¶ 9 (noting that "[t]he interpretation of the terms of the Trust continue to be interpreted according to California law").

[15] The orphans' court also pointed to Judge Klein's July 11, 2019 ruling in the Superior Court of California, County of Los Angeles, in which he declared that California no longer had jurisdiction over the Trust and that the principal place of the Trust administration was Pennsylvania.  *Id.* at 11 ¶ 11.  "The Trustee and the Beneficiaries participated in the case before Judge Klein and are bound by this ruling." *Id.*

[16] *See* Order I at 6 ¶ 36 ("On August 26, 2018, Lorraine … and Robert … sent written notice to [Ms.] Geer that she was no longer representing the [DFT] as Trustee.").

writing of August 26, 2018, did not remove Ms. Geer as Trustee of the DFT. *Id.* at 12 ¶ 15.

### Sixth, Seventh, & Eighth Issues

Appellants' sixth, seventh, and eighth issues concern alleged errors regarding the orphans' court's January 12, 2022 order declaring that Mr. Fox resigned from his position as Trustee of the DFT on May 4, 2011, that he never acted in this capacity as Trustee prior to tendering his resignation, and enjoining Appellants and Mr. Fox from "representing or holding out to any person or entity or governmental agency or court that [Mr.] Fox is now or at any time has been Trustee for the [DFT]."  Order II at 2-3.

Regarding Appellants' sixth and seventh issues, Appellants assert that the orphans' court's decision to enjoin Mr. Fox from serving as the DFT's Trustee was "surprising" and that its finding that Mr. Fox is not a Trustee of the DFT "lacks any factual support or legal basis."  Appellants' Brief at 47-48. After noting that Mr. Fox was expressly named in the terms of the Amended Trust as the successor Trustee to Mr. Martin and that the record reflects Mr. Fox's acceptance of that appointment, Appellants puzzlingly contend that Mr. Fox "had not accepted a position as [T]rustee of the DFT" and, therefore, "the concept of 'resignation' simply did not fit."  *Id.* at 49-51 (citing Order II at 2 ¶ 12 (finding that Mr. Fox sent a notice of resignation from his position as Successor Trustee on May 4, 2011, and that Mr. Fox never acted as Trustee of the DFT)).  Moreover, they aver that "upon its own terms, [Mr.] Fox's

purported resignation had not been irrevocable…. Thus, [Mr.] Fox's execution of a 'Trustee Resignation' is of no moment." *Id.* at 51. Appellants provide no legal support or analysis for these contentions; thus, we deem these issues waived. *See In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (citations omitted).

Nevertheless, even if Appellants had not waived these claims, we would deem the orphans' court's January 12, 2022 decision to be supported by the record. The orphans' court found that "[Mr.] Fox never acted in [the] capacity as Trustee and took no official actions on behalf of the [DFT] prior to tendering his resignation on May 4, 2011." Order II at 2 ¶ 3. Notwithstanding, on October 29, 2020, Mr. Fox, "claiming to be the Trustee of the [DFT]," along with Lorraine and Robert, filed an *ex parte* petition in the Superior Court of California for the County of San Mateo, without notice to Appellees, seeking termination of the DFT and distribution of all Trust assets to the Beneficiaries. *Id.* at 2 ¶ 5. Their petition also failed to inform the San Mateo, California court that the Superior Court of California for the County of Los Angeles had previously determined the State of California lacked jurisdiction over the DFT. *Id.* The orphans' court further explained:

> [Mr.] Fox, acting in concert with the Beneficiaries, had attempted to usurp the jurisdiction of the Lawrence County Court of Common Pleas by participating in a surreptitious filing of *ex parte* petitions

- 35 -

in the State of California while the above[-]captioned case was pending before this court. The Beneficiaries and [Mr.] Fox attempted to obtain court orders from two separate California courts to terminate the Trust and to declare a retroactive distribution of all Trust assets to the Beneficiaries. This was done in spite of the fact that the Beneficiaries had requested and obtained a court order in the Court of Common Pleas of Lawrence County, Pennsylvania that enjoined any distribution, transfer or encumbrance of Trust assets. An order enjoining the Beneficiaries and [Mr.] Fox from holding [Mr.] Fox out as the Trustee to third parties and enjoining them from taking any action in the name of the Trust[] was necessary to enforce this court's finding of January 11, 2022[,] that [Ms.] Geer had been lawfully appointed Trustee of the [DFT] on June 6, 2011[,] and that she had not been removed as Trustee, and therefore continued to be the Trustee of the [DFT].

OCO II at 7-8 (unnecessary capitalization omitted).

In their eighth issue, Appellants claim that the orphans' court lacked personal jurisdiction over Mr. Fox and, therefore, "it lacked the authority to order him to do or not do anything." Appellants' Brief at 52 (citations to record omitted). They claim Mr. Fox only specially appeared in this case through counsel with the caveat that he did not consent to the orphans' court's jurisdiction. **Id.** (citation omitted). Other than providing a single citation to **King v. Detroit Tool Co.**, 682 A.2d 313, 314 (Pa. Super. 1996),[17] Appellants fail to provide any legal authority or meaningful analysis in support of their claim. It is not our job to develop this argument on behalf of Appellants. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007). Thus, we deem this issue waived. **See In re S.T.S., Jr.**, **supra**; **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining that arguments which are

---

[17] Appellants provide no explanation as to how **King** applies to this case.

not appropriately developed are waived on appeal; arguments that are not appropriately developed include those where the party has failed to cite relevant authority in support of his contention).

Even if Appellants had preserved this claim, we would conclude that no relief is due. As the orphans' court explained in its Rule 1925(a) opinion:

> While Pa.R.C[iv].P. 1012[(a)] states that a party may enter a written appearance and that doing so does not constitute a waiver of the right to raise any defense including question of jurisdiction or venue, [Mr.] Fox did much more than just enter a general appearance through his attorney[,] Jennifer Mihok. Had he merely filed an appearance and filed a motion challenging the jurisdiction of the Lawrence County Court over the administration of the Trust, [Mr.] Fox may not have submitted himself to the personal jurisdiction of the [c]ourt. However, [Mr.] Fox did not only file an appearance and challenge jurisdiction, he conducted a substantive and affirmative act by claiming to be the Trustee of the [DFT] and filing a praecipe to discontinue the action that [Ms.] Geer had filed.[18] This is not a case in which [Mr.] Fox had been brought into the case as either a defendant or as a respondent to a claim or petition by another party. Rather, [Mr.] Fox inserted himself into the case and directed the Prothonotary to discontinue a case that he had not initiated. By conducting this act, [Mr.] Fox submitted himself to the jurisdiction of the Lawrence County Court of Common Pleas.

OCO II at 7 (unnecessary capitalization omitted).

### Ninth Issue

Appellants appear to have abandoned their final claim regarding the orphans' court's finding that a California court had determined California did

---

[18] "[A] written appearance, in and of itself, does not constitute a waiver of the right to raise jurisdictional questions." *O'Barto v. Glossers Stores, Inc.*, 324 A.2d 474, 475 (Pa. Super. 1974) (citing Pa.R.Civ.P. 1012). "However, when a party takes some other and further action to the merits of a case, a waiver may be found." *Id.* at 475-76 (citation omitted).

not have jurisdiction over the DFT, as there is no discussion or legal analysis of this issue whatsoever in their brief. Hence, we are constrained to deem this issue waived. ***See Estate of Haiko v. McGinley***, 799 A.2d 155, 161 (Pa. Super. 2002) (stating that the Rules of Appellate Procedure make clear that an appellant must support each question raised by discussion and analysis of pertinent authority; absent a reasoned discussion of the laws in an appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of the issue on appeal).

Nevertheless, even if Appellants had preserved this issue, we would agree with the orphans' court that Judge Klein's July 11, 2019 order stating

> that the situs of the Trust had long been removed from the State of California, that the Trust had for years been administered in the Commonwealth of Pennsylvania, that the [DFT] no longer had any substantive connection with the State of California, and that California had no jurisdiction over [Ms.] Geer or the [DFT] … speaks for itself.

OCO II at 8.

Accordingly, we affirm the orders entered by the orphans' court on January 11 and 12, 2022.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2023

- 38 -